# UNITED AIR LINES, INC. *v.* MAHIN, DIRECTOR OF DEPARTMENT OF REVENUE, ET AL.

No. 71–862.  Argued November 8, 1972—Decided March 5, 1973

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, POWELL, and REHNQUIST, JJ., joined. DOUGLAS, J., filed a dissenting opinion, in which STEWART and WHITE, JJ., joined, *post,* p. 632. WHITE, J., filed a dissenting opinion, *post,* p. 639.

*Mark H. Berens* argued the cause for appellant. With him on the briefs were *H. Templeton Brown, Robert L. Stern* and *William Bruce Hoff, Jr.*

*Robert J. O'Rourke* argued the cause for appellees. With him on the brief were *William J. Scott,* Attorney General of Illinois, and *Warren K. Smoot* and *Calvin C. Campbell,* Assistant Attorneys General.[*]

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

United Air Lines, Inc., challenged the constitutionality of the Illinois general revenue use tax as applied to aviation fuel stored in Illinois and then loaded aboard aircraft there and consumed in interstate flights. The Supreme Court of Illinois upheld the state tax as currently applied, concluding that it did not impose an unconstitutional burden on interstate commerce. 49 Ill. 2d 45, 273 N. E. 2d 585 (1971). We noted probable jurisdiction. 405 U. S. 986 (1972). We now affirm that holding, but we vacate the judgment and remand the case for consideration of an issue under state law.

Since 1953, United has purchased aviation fuel from a supplier for delivery from the supplier's Indiana facilities. This fuel is utilized by United in its extensive operations out of O'Hare and Midway airports in the Chicago area of Illinois. Although the method of delivery varies for different types of fuel and for the two airports,[1] all fuel

---

[*] *James A. Velde* filed a brief for American Airlines, Inc., et al. as *amici curiae* urging reversal.

[1] Turbine (jet) fuel for use at O'Hare is shipped by common carrier pipeline from the supplier's Indiana terminals to a 15-million-gallon storage facility at Des Plaines, Illinois. App. 168–169. Normally, three deliveries are made each month to this facility. App. 129. Smaller quantities of fuel are transferred by pipeline to facilities maintained by United at O'Hare.

Turbine fuel for use at Midway and aviation gasoline for both

is delivered by common carrier and is held for periods ranging from two to 12 days in ground storage facilities maintained in Illinois by United.[2] Fuel for both interstate and intrastate operations is delivered in the same manner.[3] United voluntarily has paid the tax on fuel consumed in purely intrastate operations. Only the tax as applied to fuel used in interstate flights is in issue.

In 1955, Illinois enacted a general tax on the "privilege of using" tangible personal property in the State. Ill. Rev. Stat., c. 120, § 439.3 (1971). "Use" was defined to include the "exercise . . . of any right or power over tangible personal property incident to the ownership of that property." § 439.2. Some exceptions from this inclusive definition were made. One of these exceptions, which the statute recites, § 439.3, is "[t]o prevent actual or likely multistate taxation," is the temporary-storage provision. This denies application of the tax to property brought from another State and stored temporarily in Illinois before use solely outside the State.[4]

---

airports is transported from Indiana by common carrier tank truck to airport storage facilities. App. 159.

[2] The parties have stipulated that the period of storage ranges from two to 12 days. App. 38. The Des Plaines storage facilities are not owned by United; it and another airline jointly lease the facilities. United shares in the cost of repairs, the risk of loss, and the employment of a managing agent. App. 132, 168.

[3] App. 173–174. United uses fuel from the storage facilities for its intrastate training flights and for the intrastate leg of flights that stop at both Chicago and Moline, Illinois. 49 Ill. 2d 45, 47–48, 273 N. E. 2d 585, 586. United also engages in interstate charter flights. App. 37 n. 6.

[4] The temporary-storage provision excepts

"(d) the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State or physically attached to or incorporated into other tangible personal property that is used solely outside this State." § 439.3.

Since this general use tax, apart from its exceptions, reached all tangible personal property, it applied by its terms to fuel stored for use in vehicles. From 1955 to 1963, the Illinois Department of Revenue allowed interstate common carriers to benefit from the temporary-storage provision to the extent that fuel, although loaded aboard in Illinois, was not consumed by the vehicle in that State. The amount of aviation fuel used over Illinois could be calculated because scheduled airline routes are precise and the rate of consumption by each type of aircraft is known. This "burn off" interpretation was changed in 1963, however, when the Department announced by bulletin that it was reinterpreting the temporary-storage provision to mean that "temporary storage ends and a taxable use occurs when the fuel is taken out of storage facilities and is placed into the tank of the airplane, railroad engine or truck." Thus, as the Illinois court described it, "all fuel loaded on United's planes at the two airports was deemed to measure the tax." 49 Ill. 2d, at 49, 273 N. E. 2d, at 587.

United's suit attacked the new interpretation on both state and federal grounds. All justices of the Supreme Court of Illinois agreed that the new interpretation did not run afoul of the Federal Constitution, but the justices disagreed over the applicability and validity of the "burn off" alternative discussed in the several opinions. 49 Ill. 2d, at 50–53, 56, 57–59, 273 N. E. 2d, at 587–589, 591–592.

I

Two decisions of this Court were relied upon by the Illinois court in reaching its conclusion that the present application of the state tax was not offensive to the Federal Constitution. The cases are *Edelman* v. *Boeing Air Transport,* 289 U. S. 249 (1933), and *Nashville, Chattanooga & St. Louis R. Co.* v. *Wallace,* 288 U. S. 249 (1933). We agree that these cases support the

application of the Illinois tax to all fuel stored in Illinois and loaded aboard United's aircraft for in-flight consumption.

In *Edelman,* this Court upheld a state gasoline use tax, even when imposed on gasoline imported from outside the State, stored in tanks at an airport, and loaded aboard planes departing on interstate flights. The decision in *Edelman* followed the holding in *Nashville* that oil purchased by a railroad outside Tennessee but stored in Tennessee solely for the purpose of providing motive power for the railroad's interstate and intrastate operations could be subjected constitutionally to a Tennessee privilege tax. In *Nashville,* as in this case, none of the fuel stored was held as inventory for sale, and the tax was not one for the use of special services furnished by the State to the taxpayer railroad.

In *Edelman,* the Court accepted the State's determination that the taxable event was withdrawal from storage rather than consumption. 289 U. S., at 251. The airline in *Edelman* contended, *id.,* at 252, that the state tax was invalid under *Helson* v. *Kentucky,* 279 U. S. 245 (1929). In *Helson,* the Court held that a Kentucky tax on the use of gasoline within the State fell too directly on interstate commerce when it was imposed on fuel loaded in Illinois but consumed in the course of an interstate ferry's trip through Kentucky. In *Edelman,* the Court distinguished *Helson* because storage, rather than consumption, was the taxable event. See *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167 (1939).

The Supreme Court of Illinois characterized the taxable "use" under the Illinois statute as either storage or withdrawal from storage. United argued in the state court that the temporary-storage provision constituted a legislative waiver of the right to tax storage prior to loading. The Illinois court rejected this contention, noting that United stored fuel at the airport for general use.

On these facts, the Supreme Court of Illinois concluded that the Illinois use tax applied to storage by United before loading and that this application was constitutional:

> "Under the circumstances, the 'storage' becomes something more than a 'temporary storage' for safekeeping prior to its use solely outside of Illinois. Such storage, under the plain words of the statute, does not qualify under the temporary storage exemption and, as the authorities already discussed reveal, *either the storage itself or the withdrawal therefrom are uses which may be taxed without offending the commerce clause of the Federal constitution."* 49 Ill. 2d, at 55–56, 273 N. E. 2d, at 590 (emphasis added).

The Illinois dissenters, too, treated the taxable event as storage or withdrawal. 49 Ill. 2d, at 57, 273 N. E. 2d, at 591.[5]

---

[5] The Illinois court's interpretation of the temporary-storage provision makes it clear that loading into the tanks of the airplane is a relevant event but is not the taxable event. The court indicated that the temporary storage exemption suspended the effect of otherwise taxable events:

"To put it another way, the legislature has stated that the temporary storage and the withdrawal therefrom are not taxable uses, if the property in question is to be used solely outside the State. It is clear that if United was to withdraw its fuel from storage at Des Plaines and the airports and transport it outside the State for use elsewhere, as for example at an airport in nearby Wisconsin, the exemption would apply and neither the storage, nor the withdrawal, nor the transportation of the fuel outside the State would be uses subject to the tax." 49 Ill. 2d, at 55, 273 N. E. 2d, at 590.

Under this view, all the fuel is "used" and subject to Illinois tax when it is temporarily stored or withdrawn from storage. The taxable event is nullified, however, if the fuel is transported from the State for consumption elsewhere.

Although this use of a subsequent event to define the effect of a prior event may appear somewhat unusual, the result may be said

This Court usually has deferred to the interpretation placed on a state tax statute by the highest court of the State. *Scripto, Inc.* v. *Carson,* 362 U. S. 207, 210 (1960); *General Trading Co.* v. *State Tax Comm'n,* 322 U. S. 335, 337 (1944). See *Evco* v. *Jones,* 409 U. S. 91 (1972). As in *Edelman,* we see no reason to ignore, or to disagree with, the state court's determination that the taxable event is storage rather than consumption.

We hold that *Edelman* and *Nashville* support the conclusion of the Supreme Court of Illinois that this tax, as applied to all fuel withdrawn from storage for consumption in an interstate vehicle, does not place an unconstitutional burden on interstate commerce. Further, we decline to hold that *Edelman* has outlived its usefulness.[6] We must concede that for a long time this area of state tax law has been cloudy and complicated, primarily because the varied nature of interstate activities makes line drawing difficult. This Court has established some precedents, however, and *Edelman* and *Nashville* remain useful guidelines.

The line drawn between an impermissible tax on mere consumption of fuel, as in *Helson,* and a permissible tax on storage of fuel before loading, as in *Edelman* and *Nashville,* continues to serve rational purposes. Retaining the line at this point minimizes the danger of double taxation and yet provides a source of revenue having a

---

to be compelled since fuel in transit may not be constitutionally taxed. See *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U. S. 157 (1954). A similar exemption for gasoline "exported or sold for exportation from the State" was present in the Wyoming statute challenged in *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, 250 (1933).

[6] *Amici* have urged reconsideration of *Edelman,* arguing that it represents "a high-water mark in the Court's search in the early thirties for formulas that would assist states in finding additional sources of revenue." Brief for American Airlines et al. 13.

relation to the event taxed. Double taxation is minimized because the fuel cannot be taxed by States through which it is transported, under *Michigan-Wisconsin Pipe Line Co.* v. *Calvert*, 347 U. S. 157 (1954), nor by the State in which it is merely consumed, under *Helson*. A fair result is achieved because a State in which preloading storage facilities are maintained is likely to provide substantial services to those facilities, including police protection and the maintenance of public access roads.[7]

Since no persuasive reason has been advanced for changing the established rule, we reaffirm *Edelman* and *Nashville* as precedents.

## II

United contended in state court that the Illinois temporary-storage exemption should be interpreted, as a matter of state law, to encompass the "burn off" rule which, as noted above, had received administrative sanction for eight years. 49 Ill. 2d, at 49, 273 N. E. 2d, at 587. Two justices of the Illinois court deemed themselves bound under *Helson* to regard the "burn off" rule as invalid under the Federal Constitution. 49 Ill. 2d, at 50, 273 N. E. 2d, at 587. This basis for construing a state statute creates a federal question. *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 120 (1924). The possibility that the state court might have reached the same conclusion if it had decided the question purely as a matter of state law does not create an adequate and independent state ground that relieves this Court of the

---

[7] Although this is a general state tax, rather than a toll on commerce, this Court has recognized that interstate commerce can be "required to pay a nondiscriminatory share of the tax burden." *Braniff Airways* v. *Nebraska State Board of Equalization*, 347 U. S. 590, 598 (1954). In *Helson* v. *Kentucky*, 279 U. S. 245 (1929), in contrast, the ferry boat was asked to bear more than its "nondiscriminatory share" when it was taxed only for passing through Kentucky waters.

necessity of considering the federal question. *Beecher v. Alabama,* 389 U. S. 35, 37 n. 3 (1967); see C. Wright, Federal Courts § 107, p. 488 (2d ed. 1970). Since the other justices of the Illinois court divided three to two on the state law issue, the votes of the two who felt bound by *Helson* could be determinative of the state issue. Under these circumstances, we proceed to consider the validity of the "burn off" rule in the light of *Helson,* as United has urged us to do. See *Perkins* v. *Benguet Mining Co.,* 342 U. S. 437, 441–443 (1952).

The facts in *Helson* are different from the facts here. In *Helson,* the operators of the interstate ferry boat purchased and took delivery of fuel in Illinois. The office, the place of business, and the situs of all the taxpayer's property were in Illinois. The boat crossed the Ohio River into Kentucky on regular runs, and Kentucky sought to impose a tax on the use of gasoline consumed in Kentucky. The Court invalidated the tax "computed and imposed upon the use of the gasoline thus consumed." 279 U. S., at 248.

In the present case, Illinois is the State of storage of United's fuel before loading. If Illinois imposed a tax on the basis of that storage but measured the tax only by the fuel consumed over Illinois, a lower tax would result. The dangers of multiple taxation and possible tax windfalls, already suggested as justifying the *Helson* decision, would not be present if the tax were imposed on storage prior to loading but were measured by consumption. Multiple taxation and tax windfalls are avoided because only one State—the State of storage before loading—has a local event upon which a tax is imposed. Under *Helson,* States over which the planes fly will be unable to impose a tax on mere consumption.[8]

---

[8] Those justices of the Illinois court who relied on *Helson* did not consider, apparently, any interpretation of *Helson* that would pre-

The use of a method of tax measurement that is intimately related to interstate commerce is not automatically unconstitutional. Tolls on the use of facilities that aid interstate commerce have been upheld even when measured by passengers or by mileage traveled on the highways of a State. *Evansville-Vanderburgh Airport Authority District* v. *Delta Airlines,* 405 U. S. 707 (1972); *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245 (1928). Upon the facts before us,[9] we see no constitutional barrier to the use of the "burn off" rule by Illinois to measure the tax imposed for storage before loading.

Since we now determine that the federal compulsion felt by two justices of the Illinois court is not warranted, we remand the case to avoid the risk of "an affirmance of a decision which might have been decided differently if the court below had felt free, under our decisions, to do so." *Perkins* v. *Benguet Mining Co.,* 342 U. S., at 443. We, of course, express no opinion on the construction of the temporary-storage provision under state law.

The judgment of the Supreme Court of Illinois is vacated and the case is remanded to that court for further proceedings.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE STEWART and MR. JUSTICE WHITE concur, dissenting.

The Court today makes a break with the history of the Commerce Clause that has been largely responsible for creating in this Nation a great common market. One

---

vent multistate taxation. They suggested that an adoption of the "burn off" rule would allow taxation by every State over which United's planes fly. 49 Ill. 2d, at 51, 273 N. E. 2d, at 588.

[9] United successfully calculated and paid the state tax under the "burn off" interpretation for eight years. App. 41. No suggestion has been made that the recordkeeping procedures were an intolerable burden on commerce or that special equipment must be installed to measure fuel consumption.

protective device this Court has used to keep the national channels of commerce open against hostile state legislation has been the constitutional ban on state taxation levied on interstate activities.  In 1873, in *Case of State Freight Tax,* 15 Wall. 232, we held unconstitutional a state tax "so far as it applies to articles . . . taken up in the State and carried out of it . . . ."  *Id.,* at 282. While there are ways in which interstate commerce can be required to pay its way, we have not until today abandoned the basic principle that a State may not tax interstate activities.  That is what is done here, for the Illinois tax is levied on filling the fuel tanks of airplanes taking off for interstate or foreign journeys.  If Illinois can tax that segment of the interstate activity, there is no reason why she may not tax the takeoff itself.  The filling of fuel tanks to make an interstate or foreign journey is as indispensable a part and parcel of the interstate or foreign journey as using the runways for that purpose.

The Supreme Court of Illinois sustained the Illinois Use Tax[1] on all aviation fuel loaded aboard United's interstate and foreign flights departing from Chicago.  United purchases fuel outside Illinois and stores it in Illinois temporarily for its interstate and foreign operations.  The use tax exempts from the tax property purchased outside Illinois, temporarily stored in the State, and used solely outside the State.[2]

Until 1963 the temporary storage exception was construed by the Illinois Department of Revenue so as to subject to the use tax only that fuel loaded on departing flights that was actually burned over Illinois.  In 1963 the Department changed its prior ruling and announced:

"[T]emporary storage ends and a taxable use occurs when the fuel is taken out of storage facilities

---

[1] Ill. Rev. Stat., c. 120, § 439.1 *et seq.*

[2] *Id.,* § 439.3.

and is placed into the tank of the airplane, railroad engine or truck. At this point, the fuel is converted into its ultimate use, and, therefore, a taxable use occurs in Illinois."

The Supreme Court of Illinois upheld that construction and application of the use tax against the claim that it violates the Commerce Clause, saying that United's storage becomes something more than temporary storage for safekeeping "prior to its use solely outside of Illinois." 49 Ill. 2d 45, 55, 273 N. E. 2d 585, 590.

The taxable event is the act of loading the fuel aboard United's aircraft in Illinois preparatory to their interstate or foreign journey. The majority states that the Supreme Court of Illinois concluded that either the storage of the gasoline itself or the withdrawal therefrom is a use which may be taxed without offending the Federal Constitution. But that statement of the Supreme Court of Illinois was made in its discussion of the exemption from the use tax which, as relevant here, provides: "[T]he temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State." Ill. Rev. Stat., c. 120, § 439.3 (1971). That means that the temporary-storage exemption would extend, not merely to storage on the ground, but also to its loading aboard the transportation vehicles, such as trucks or railroad cars, and to its transportation from the State. It is thus obvious that, unless the means of removing the property from the State is included in the scope of the temporary storage, it would be a nullity, as appellant maintains. Since in this case, there is no tax if fuel is withdrawn from storage and taken from the State by other means, it is clear that neither the storage nor the removal from storage is what makes the fuel taxable. The majority properly notes that, as a matter of state

law and the Illinois court's interpretation thereof, it is the "consumption" wholly without the State that makes the exception operable. Conversely, I read the Illinois opinion to mean that, as a matter of state law, it is at least partial consumption within the State that brings the tax on *all* the fuel into play. That is so even if only a small portion of the fuel is consumed within the State, while the remainder is consumed out of State during an interstate or foreign flight. The inescapable conclusion from the state court's interpretation of this state law is that the act of loading the fuel into the fuel tanks of the interstate aircraft solely for use as the motive power is the taxable event.

If that event were used to tax fuel used on an *intrastate* flight, no problem under the Commerce Clause would arise. But loading is part of the interstate activity when planes prepare for an interstate journey, just as loading is a part of the shipment of goods by rail or water interstate (*Puget Sound Stevedoring Co.* v. *Tax Comm'n,* 302 U. S. 90, 92–94; *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U. S. 422, 427, 433–434) and just as local pickups of parcels and local delivery of parcels in interstate movement are not permissible grounds "for a state license, privilege or occupation tax." *Railway Express Agency* v. *Virginia,* 347 U. S. 359, 368.

In *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69, we held invalid a state sales tax levied on the delivery of fuel oil into a ship for overseas carriage. We said "[t]he incident which gave rise to the accrual of the tax was a step in the export process." *Id.,* at 84. A like result was reached in *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U. S. 157, where a State sought to impose a severance tax on the transfer of gas from a refinery pipeline to an interstate pipeline. We noted that the "taxable incidence" was the taking of gas from a local plant "for the purpose of immediate interstate transmission."

*Id.,* at 161. We, therefore, held it unconstitutional, since it was a tax "on the exit of the gas from the State." *Id.,* at 167.

The present tax is analogous to the tax on the privilege of carrying on an exclusively interstate business which we struck down in *Spector Motor Service* v. *O'Connor,* 340 U. S. 602, 608. A tax upon an integral part of interstate commerce is a tax that no State by reason of the Commerce Clause is empowered to impose, unless authorized by Congress. *Id.,* at 608.

The fuel in United's planes propels the interstate flights; because it is the source of the motive power, it is essential to the interstate journey. It is, therefore, indisputably a part and parcel of the interstate movement. *McCarroll* v. *Dixie Greyhound Lines,* 309 U. S. 176, involved an Arkansas statute which prohibited any truck or automobile from entering the State with more than 20 gallons of gasoline in its tank unless an excise tax were paid on the gasoline. The Court held the tax unconstitutional because it imposed a tax on "gasoline to be immediately transported over the roads of Arkansas *for consumption beyond.*" *Id.,* at 180 (emphasis added). Similarly, Illinois imposes its tax on all of the fuel loaded into airplane tanks, whether or not that fuel is consumed out of State. In *Helson* v. *Kentucky,* 279 U. S. 245, on which the Illinois Supreme Court relied in disapproving the earlier construction of the statute, a ferry boat operated between Illinois and Kentucky, having its office in Illinois and buying all its fuel there. Kentucky sought to tax that portion of the fuel used in Kentucky. This Court invalidated the tax, saying it was "exacted as the price of the privilege of using an instrumentality of interstate commerce." *Id.,* at 252. If that tax is invalid, it follows *a fortiori* that Illinois may not tax the movement of airplanes from Illinois to California, from Illinois to Europe, or from Illinois to any other out-of-state point.

It is now well settled that interstate commerce can be required to pay its way, *Illinois Central R. Co.* v. *Minnesota,* 309 U. S. 157; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250; *Greyhound Lines* v. *Mealey,* 334 U. S. 653; *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450, a result commonly reached by formulae which allocate to the taxing State business derived from operations within the State. *Railway Express Agency* v. *Virginia,* 358 U. S. 434. Yet, when pieces or segments of an interstate business are taxed, our cases reveal discrimination in approving or disapproving taxes that may be imposed. A State may not exact a license tax for the privilege of carrying on interstate commerce. *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33, 56–58; *Murdock* v. *Pennsylvania,* 319 U. S. 105, 112–113. As stated in *Berwind-White,* taxes "which are aimed at or discriminate against [interstate] commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey" are within the ban, since they may "so readily be made the instrument of impeding or destroying interstate commerce." 309 U. S., at 48.

Sales within the State, however, are taxable, though the goods have reached the market by interstate channels. *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 43; *McGoldrick* v. *Berwind-White Co., supra,* at 58. The sales tax in *Berwind-White* was on the "transfer of title or possession, or both," *id.,* at 43. And we sustained the tax because of "a local activity" which we described as "delivery of goods within the state upon their purchase for consumption," *id.,* at 58. As a consequence, an out-of-state buyer who purchases goods in New York City and takes them with him pays the tax, while if he has them shipped to him, he pays no sales tax.

Although "delivery of goods" within the State may be taxed, "solicitation" within the State for out-of-state

confirmation and shipment into the State may not be. *Nippert* v. *Richmond,* 327 U. S. 416, 422; *West Point Grocery Co.* v. *Opelika,* 354 U. S. 390. In *Dunbar-Stanley Studios* v. *Alabama,* 393 U. S. 537, a tax was sustained on out-of-state photographers, since their activities were not soliciting orders for an out-of-state house but taking photographs within the State.

The use tax came into being to complement the sales tax, *i. e.,* to fill in gaps where the States could not constitutionally tax interstate arrivals or departures. See *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 581. Thus, goods may be taxed at the end of their interstate journey, where the tax does not discriminate against interstate commerce. *Id.,* at 582–583; *Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62 (use tax on storage, use, or other consumption); *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167 (storage and use). Use taxes imposed on storage or withdrawal from storage have consistently been sustained. *Eastern Air Transport* v. *Tax Comm'n,* 285 U. S. 147; *Gregg Dyeing Co.* v. *Query,* 286 U. S. 472; *Nashville, Chattanooga & St. Louis R. Co.* v. *Wallace,* 288 U. S. 249; *McGoldrick* v. *Berwind-White Co., supra,* at 49.

Nice distinctions are often necessary because, although all taxes on interstate carriers "in an ultimate sense, come out of interstate commerce" (*Freeman* v. *Hewit,* 329 U. S. 249, 256), the constitutional ban relates only to "a direct imposition on that very freedom of commercial flow which for more than a hundred and fifty years has been the ward of the Commerce Clause." *Id.,* at 256.

For Illinois to tax the storage of fuel within its borders is, of course, constitutionally permissible, even though in time the fuel may be used in interstate or foreign commerce. In *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, 251, the use tax was "not levied upon the consumption of gasoline in furnishing motive power for re-

spondent's interstate planes." The tax was "applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes." *Ibid.* "It is at *the time of withdrawal alone* that 'use' is measured for the purposes of the tax." *Id.,* at 252. (Italics added.) At that time, the gasoline was not irrevocably committed to interstate commerce, for it might be diverted to planes on intrastate journeys.

By contrast, the taxable event on which Illinois levies her tax is not storage for future use, or withdrawal from storage, but only loading in the tanks of planes preparing for interstate or foreign journeys. It is, therefore, inescapably a tax on the actual motive power for an interstate or foreign journey. Taxing the fuel loaded in a plane destined for an interstate or foreign journey is, in other words, taxing the privilege of using a facility in commerce, because the motive power [3] represented by the fuel has become part and parcel of the facility. The decision today marks a break with our constitutional tradition, which, absent an Act of Congress, has led this Court consistently to hold that the free flow of interstate commerce is a ward of the Commerce Clause. Without that free flow of commerce we would not have the great common market we enjoy today.

I would reverse the judgment of the Supreme Court of Illinois.

MR. JUSTICE WHITE, dissenting.

The Illinois statute in question, Ill. Rev. Stat., c. 120, § 439.3 (1971), taxes the use of tangible personal property in Illinois, and "use" is defined as being the "exercise . . .

---

[3] *Edelman* was distinguished in *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, as involving a tax "upon events prior to the commerce," *id.,* at 176, the Court going on to say: "The principle illustrated by the *Helson* case forbids a tax upon commerce or consumption in commerce." *Ibid.*

of any right or power over tangible personal property incident to the ownership of that property . . . ." *Id.,* § 439.2. The Illinois Supreme Court held that as applied in this case the statute taxed either the storage or the withdrawal therefrom of aviation fuel. But the statute itself goes on to exempt from tax property temporarily stored in the State, withdrawn from storage, loaded on transportation facilities and transported for use solely outside the State. *Id.,* § 439.3 (d). For the tax to apply, the property must not only be stored and subsequently withdrawn, but must also be further used or consumed in the State. It is this actual use or consumption in the State after storage and withdrawal that triggers the tax. Thus it was enough here to invoke the tax that the fuel was temporarily stored, withdrawn, loaded on interstate aircraft, and then partially used within the State. But *Helson* v. *Kentucky,* 279 U. S. 245 (1929), forbids taxing the use of gasoline consumed within the State on an interstate trip. And as for that portion of the fuel withdrawn from storage, loaded on an aircraft and consumed in another State, the exemption in the statute would seemingly cover it; but if the exemption itself is not to apply, *Helson, a fortiori,* bars the tax. Moreover, under the Due Process Clause of the Fourteenth Amendment, Illinois has no jurisdiction to tax the use of property occurring in another State. *Norfolk & W. R. Co.* v. *Missouri State Tax Comm'n,* 390 U. S. 317, 324–325 (1968), and cases there cited.