## No. 25388

Union Pacific Railroad Company, a Utah corporation v. The City and County of Denver, a municipal corporation, and Charles L. Temple, Manager of Revenue of the City and County of Denver

## No. 25630

The Denver and Rio Grande Western Railroad v. The City and County of Denver, and Charles L. Temple, Manager of Revenue in and for the City and County of Denver, State of Colorado

(511 P.2d 497)

Decided June 25, 1973. Rehearing denied No. 25388 July 16, 1973. Rehearing denied No. 25630 July 9, 1973.

No. 25388 —
No. 25630 —

Daniel S. Morrison, Clayton D. Knowles, C. B. Schaefer, H. F. Coray, for plaintiff-appellant.

Max P. Zall, City Attorney, W. Keith Peterson, Assistant, Gerald Himelgrin, Assistant, for defendants-appellees.

John S. Walker, Jr. for plaintiff-appellee.

Max P. Zall, City Attorney, W. Keith Peterson, Assistant, Gerald Himelgrin, Assistant, for defendants-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

These two cases raise the same legal questions and so have been consolidated for review. The plaintiffs in each case (Union Pacific Railroad Company and Denver and Rio Grande Western Railroad Company) will be referred to by name or as the "railroad companies." The defendant in each case (City and County of Denver) will be referred to as either the "City" or "Denver."

Articles 166C and 166D of the Revised Municipal Code of Denver impose two taxes: (1) the "Employee Occupational Privilege Tax" (employee's tax), a $2 per month tax imposed directly on employees who receive compensation in excess of $250 per month and who perform some service within Denver during the month; and (2), the "Business Occupational Privilege Tax" (employer's tax), a tax upon all employers, having some situs in Denver for any period of time in a calendar month, of $2 per month for each above-described employee. The railroad companies do *not* attack the validity of the employee's tax and, in fact, the companies do withhold the tax from their employees' salaries and remit the proceeds to Denver. Rather, the companies question whether the *employer's* tax can be constitutionally applied to interstate carriers.

Denver's Manager of Revenue (Manager) is authorized to administer the employer's tax and to promulgate reasonable rules and regulations for the administration and enforcement of the tax. Pursuant to this authority, the Manager ruled as follows with regard to the application of the tax to common carriers located in Denver:

"To enable you [common carrier] to comply with the provisions of the 'Head Tax' Ordinances you may withhold and remit such tax on employees [employee tax] who are Denver based and reside in the Denver Metropolitan Area and report to or work out of a Denver location of the Common Carrier.

"In addition to withholding and remitting the $2.00 per month employee tax, the employer will be required to pay the matching $2.00 per month employer tax for each of the taxable employees."

The railroad companies each received from the Manager of Revenue a "Notice of Final Determination, Assessment and Demand for Payment" of the employer's tax. Each company petitioned the Manager for a review and modification of the assessment. A separate hearing was held on each petition and each was denied by the Manager. In separate district court actions, the companies sought review of the Manager's decisions.

In *The Denver and Rio Grande Western Railroad Company v. City and County of Denver,* Denver appeals from an order of the district court reversing the Manager's decision, ruling that the tax would place an unreasonable burden on interstate commerce and remanding the case to the Manager with directions to devise a formula which would reasonably apportion the tax in relation to the volume of interstate and intrastate business done by the railroad company, *i.e.,* "determine the number of employees who theoretically could be considered as performing in intrastate commerce." We reverse.

In *Union Pacific Railroad Company v. City and County of Denver,* Union Pacific Railroad Company appeals from an order of the district court affirming the Manager's decision and ruling that the tax was not discriminatory and was not an unreasonable burden on interstate commerce. We affirm.

I.

The railroad companies argue that the employer's tax, as applied to interstate carriers, places a direct burden on interstate commerce and therefore violates U.S. Const. art. I, § 8 (the Commerce Clause).[1] The railroad companies further

_____

[1] In *Denver v. Duffy,* 168 Colo. 91, 450 P.2d 339 (1969), we ruled that Denver had the authority to adopt and enforce the employer's tax at issue here. Our review of the tax at that time was limited to the question of Denver's authority and specifically did not extend to a review of the validity of the tax as applied to any particular employer.

argue that the employer's tax can be applied to them only if it is apportioned between the companies' interstate and intrastate business.

In *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940), the United States Supreme Court stated as follows:

"For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society."

\* \* \*

"The simple but controlling question is whether the state has given anything for which it can ask return."

We do not view the Denver employer's tax as a tax on the privilege of doing interstate business as urged by the railroad companies, but rather as a tax on the privilege of using services and facilities provided by Denver. The clear purpose of the tax is to require that businesses located within Denver pay a fair share of the expenses incurred by Denver in providing those services and facilities.[2] Revised Municipal Code of Denver, 166D. 2. *Cf. United Airlines v. Mahin,* 410 U.S. 623, 93 S.Ct. 1186, 35 L.Ed.2d 545 (1973).

Having found that the tax is a "user" tax designed to require the recipient of City-provided services and facilities to pay a reasonable portion of the City's costs, our decision as to whether such a tax places a direct or unreasonable burden on interstate commerce is guided by the United States Supreme Court decision of *Evansville-Vanderburgh Airport*

---

[2] We point out that at the hearing before the Manager of Revenue, the attorney for the Denver and Rio Grande Western Railroad Company agreed that the Company received benefits from the City's street and highway maintenance programs, property protection, police and fire protection, and the use of the City's courts.

*Authority District v. Delta Airlines,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). In that case, the Supreme Court held that a state or municipal charge of $1 for each passenger enplaning on a commercial airplane at the airports in question did *not* place an unreasonable burden on interstate commerce and thus did not violate the Commerce Clause of the United States Constitution. In so deciding, the court stated as follows:

"[W]hile state or local tolls must reflect a 'uniform, fair and practical standard' relating to public expenditures, it is the amount of the tax, not its formula, that is of central concern. At least so long as the toll is based on some fair approximation of use or privilege for use . . . and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facilities by individual users."

We hold that, under the above-quoted test, the Denver tax is constituitonally valid as applied to the railroad companies.

First, we view the tax to be based on a fair approximation of use. The amount of the tax is determined generally by the number of employees of a business having some situs in Denver. We deem it not unreasonable to say that the number of employees indicates the size of a business, and the greater the size of a business, the greater will be the demands on municipal services. Although the number of employees of a business may present only a rough approximation of the business' use of municipal services and facilities, we do not view the taxing incident to be wholly unrelated to such use.

Second, similar to the fee in the *Airport Authority* case, this tax does not discriminate against interstate commerce. It is applied equally to both interstate and intrastate businesses. There has been no showing of any inherent differences between the two types of businesses such that the application of this tax to each discriminates against either.

Third, as in the *Airport Authority* case, the railroad companies have not shown that the tax is excessive in

relation to the costs incurred by Denver in providing municipal services and facilities. The fact that the revenues received from the tax go into the City's general fund is immaterial so long as the funds received by the City are not shown to exceed the City's costs in providing services and facilities. *Cf. Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana,* 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 (1947); and *Morf v. Bingaman,* 298 U.S. 407, 56 S.Ct. 756, 80 L.Ed. 1245 (1936).

■ For the above-stated reasons, we hold that the Denver employer's tax does not place a direct or undue burden on interstate commerce; nor must the tax, as applied to interstate carriers, be apportioned between interstate and intrastate business. *See Capitol Greyhound Lines v. Brice,* 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950).

The railroad companies urge that the *Airport Authority* case is distinguishable from the instant case for the following reasons: the Denver employer's tax is a general revenue measure rather than a "user" tax which is designed to make the user pay a reasonable charge to help defray the cost of the construction and maintenance of state or municipal facilities; the tax does not involve reasonable charges for the use of *particular* or *special* facilities provided by the City; and the tax is wholly unrelated to the use of Denver-supplied services and facilities.

We have earlier disposed of two of these arguments by finding that Denver's employer's tax is in fact a "user" tax, and that the incident of the tax, *i.e.,* the number of employees, is *not* wholly unrelated to the employer's use of Denver's services and facilities. We further see no validity in the argument that the employer's tax here is distinguishable from the enplanement tax in the *Airport Authority* case on the ground that, in *Airport Authority,* the tax was to be used to defray the cost of special or particular facilities. It would be a pointless exercise for this court to require the City to impose a number of specific taxes on the employers for each specific service provided by the City — *i.e.,* a 50¢ per month charge per employee for police protection, or a 50¢ per

month charge per employee for fire protection — rather than permit the City to consolidate the costs of the various services into a single tax.

## II.

The railroad companies contend that the application of Denver's tax to the companies creates a danger of multiple taxation since the companies' employees are only required to perform *some* services in Denver at some time during the month. As noted previously, the Denver Manager of Revenue did issue a ruling to the effect that an employer who is a common carrier would be required to pay the tax only on those employees who are Denver based, who reside in the Denver metropolitan area, and who report to or work out of a Denver location of the common carrier. The companies have not shown by any evidence that they have been or will be subject to multiple taxation under the present ordinance and the regulation adopted pursuant thereto.

If multiple taxation occurs, relief, if any, could be granted to the employer only as to the employees whose services in different locations cause it. Under the record here we do not reach the question.

## III.

We have reviewed the other arguments made by the railroad companies and find them to be without merit.

Judgment affirmed in Supreme Court No. 25388. Judgment reversed in Supreme Court No. 25630 and the cause is remanded with directions to enter judgment in favor of the City.

MR. JUSTICE HODGES does not participate.