The TOWN OF EAGLE a Colorado statutory town; Roxie Deane, in her capacity as Mayor of the Town of Eagle; and Rick Dunford, Jean Johnson, Bill Heicher, Paul Gregg, Tom Ehrenberg, and Bruce Hasbrouck, in their capacities as members of the Board of Trustees of the Town of Eagle, Petitioners,

v.

Paul SCHEIBE and Judy Scheibe d/b/a Best Western Eagle Lodge; and Eagle Economy Lodging, L.L.C. d/b/a Holiday Inn Express, Respondents.

No. 99SC213.

Supreme Court of Colorado,
En Banc.

Sept. 18, 2000.

As Modified on Denial of Rehearing
Oct. 10, 2000.

Carter & Sands, P.C., Edward P. Sands, Rifle, Colorado, Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, Attorneys for Petitioners..

Alexander & Crabtree, P.C., C. Scott Crabtree, Stephen Fitzsimmons, Denver, Colorado, Attorneys for Respondents.

Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado, Attorney for Amicus Curiae, Colorado Municipal League.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the published opinion of the court of appeals in *Scheibe v. Town of Eagle*, 983 P.2d 133 (Colo.App.1999). The petitioners, the Town of Eagle, Roxie Deane, Rick Dunford, Jean Johnson, Bill Heicher, Paul Gregg, Tom Ehrenberg, and Bruce Hasbrouck (collectively "Eagle"), argue that the court of appeals erroneously held that the Town of Eagle, Ordinance 9 (1996) ("Eagle Tax" or "Tax"), was not a valid occupation tax pursuant to section 31–15–501(1)(c), 9 C.R.S. (1999). We agree. The judgment of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.

### I.

The Town of Eagle is a statutory town established pursuant to section 31–1–203(1), 9 C.R.S. (1999). Section 31–15–501(1)(c) authorizes Eagle, as a statutory town, to levy occupation taxes within its borders.

In 1996, the Eagle Board of Trustees, with voter approval, amended the Eagle Municipal Code through Ordinance 9, entitled "Lodging Occupation Tax." Excepting governmental and charitable entities, this ordinance levies a tax amounting to two dollars per day, per occupied room on all individuals and businesses furnishing short-term accommodations in the Town of Eagle, payable monthly.[1] The revenues from the Eagle Tax are placed in an "Open Space Preservation Fund" to be used "exclusively for the preservation of agricultural lands and for the acquisition, maintenance and management of land and easements in and around the Town of Eagle for open space buffer zones, trails within open space areas, wildlife habitats and wet land

preservation." Eagle Municipal Code § 5.05.180.

The respondents, Paul and Judy Scheibe, and Eagle Economy Lodging, L.L.C. (collectively "Hotels"), owners of lodging houses in the Town of Eagle, filed suit seeking a declaration that the Eagle Tax was not a lawful occupation tax under section 31–15–501(1)(c). They further alleged that Eagle exceeded its authority by levying an income tax in violation of article X, section 17 of the Colorado Constitution, which grants to the state the power to impose income taxes.

The trial court granted Eagle's motion for summary judgment. It distinguished *Board of Trustees of the Town of Minturn v. Foster Lumber Co.*, 190 Colo. 479, 548 P.2d 1276 (1976) (*Minturn*), and *Mountain States Telephone & Telegraph Co. v. City of Colorado Springs*, 194 Colo. 404, 572 P.2d 834 (1977) (*Mountain States*), in which this court struck down purported occupation taxes that were calculated on the basis of gross revenue. The trial court concluded that the "Tax ... bears no such direct relationship to income or receipts," and therefore, the Tax was not an income tax. Further concluding that "the [Tax] is a flat $2.00 tax on the business of renting a room or accommodation," the trial court found the Eagle Tax to be a "constitutional, valid and enforceable" occupation tax.

The court of appeals relied upon *Minturn* and *Mountain States* to reverse the trial court. Using language from those cases, the court of appeals held that "the amount of tax necessarily fluctuates each month based upon the number of plaintiffs' room 'sales,'" thereby precluding the Tax from being classified as an occupation tax. *Scheibe*, 983 P.2d at 134. In contrast to this court's analysis in the *Minturn* and *Mountain States* decisions, however, the court of appeals did not hold the Eagle Tax to be an income tax.

We granted certiorari to consider whether the court of appeals erred in holding that the

---

1. As stated in the Eagle Municipal Code:
   Effective July 1, 1996, there is hereby levied by the Town of Eagle an occupation tax on the provision of lodging upon every person or business that furnishes any hotel room, motel room, lodging room, motor hotel room, guest house room or other similar accommodation

   for consideration for less than one (1) month or thirty (30) consecutive days within the Town of Eagle in the amount of two dollars ($2.00) per day, per occupied lodging room or accommodation.
   Eagle Municipal Code § 5.05.030.

Eagle Tax was not an occupation tax within the meaning of section 31–15–501(1)(c).[2] We now hold that the Eagle Tax is a valid occupation tax pursuant to section 31–15–501(1)(c). Therefore, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

## II.

■■■ Eagle enacted its tax pursuant to section 31–15–501(1)(c), which grants municipalities:

[The power to] tax, subject to any law of this state, any lawful occupation, business place, amusement, or place of amusements ... except that, for purposes of the application of any occupational privilege tax, oil and gas wells and their associated production facilities have not been, are not, and shall not be considered an occupation or business place subject to such tax.

§ 31–15–501(1)(c). Under our precedent, this municipal taxing authority cannot infringe on the state's ability to levy income taxes because of the requirement in section 31–15–501(1)(c) that the municipality's power to impose an occupation tax is "subject to any law of this state." Article X, section 17, allows the General Assembly to "levy income taxes, either graduated or proportional, or both graduated and proportional, for the support of the state, or any political subdivision thereof." Colo. Const. art. X, § 17. We have held that the grant of this power to the General Assembly excludes the exercise of such power by municipalities. *See City & County of Denver v. Sweet*, 138 Colo. 41, 51–52, 329 P.2d 441, 446 (1958); *see also Apollo Stereo Music Co. v. City of Aurora*, 871 P.2d 1206, 1208 (Colo.1994).

### A.

■■■ The court of appeals considered itself bound by *Minturn* and *Mountain States* to strike the Eagle Tax because, although the rate of tax is constant, the amount of tax paid by the Hotels may fluctuate from month to month depending on how many rooms are rented. In those cases, we invalidated purported occupation taxes that municipalities levied against businesses based on a percentage of each business's gross revenues. *See Minturn*, 190 Colo. at 480–82, 548 P.2d at 1277–78; *see also Mountain States*, 194 Colo. at 405–06, 572 P.2d at 835. We held that the ordinances actually were income taxes and were beyond the taxing authority of municipalities. *See Minturn*, 190 Colo. at 482, 548 P.2d at 1278; *Mountain States*, 194 Colo. at 406, 572 P.2d at 835; *see also* Colo. Const. art. X, § 17 (granting to the state the exclusive power to levy an income tax). In so holding, we used the language that is now read by the court of appeals to compel its holding that the Eagle Tax is not an occupation tax:

The clear inference [from earlier decisions] is that an income tax, whether net or gross, bears a direct relation to the income or receipts of a business. An occupation tax bears no such relationship. The latter is a tax upon the very privilege of doing business, and does not fluctuate from month to month depending upon the financial success or sales of the enterprise.

*Minturn*, 190 Colo. at 482, 548 P.2d at 1278; *see also Mountain States*, 194 Colo. at 406, 572 P.2d at 835 (quoting a portion of this passage). In the view of the court of appeals, because the Eagle Tax would fluctuate monthly based on the number of rooms rented, this "mathematical reality precludes the tax from being characterized as an occupation tax." *Scheibe*, 983 P.2d at 134 (citing *Minturn* and *Mountain States*). As the following discussion indicates, this analysis is much too stringent and construes our precedent too narrowly. Variation in the amount of tax paid during each taxing period caused by calculations based on factors other than income is not fatal to a valid occupation tax.

### B.

The decision of the court of appeals was driven by some inconsistencies within our

---

2. We granted certiorari on the following issue: Whether the court of appeals erred in holding that, in accordance with this court's decision in *Board of Trustees of the Town of Minturn v. Foster Lumber Co.*, 190 Colo. 479, 548 P.2d 1276 (1976), Eagle's Tax is not a valid "occupation tax" under section 31–15–501(1)(c), because it fluctuates each month based upon the number of room "sales."

case law with respect to the articulation of the permissible scope of an occupation tax. *Minturn* and *Mountain States* characterized an occupation tax as a tax on the privilege of doing business in a municipality. *See Minturn,* 190 Colo. at 481, 548 P.2d at 1277 (quoting *City & County of Denver v. Duffy Storage & Moving Co.,* 168 Colo. 91, 108–09, 450 P.2d 339, 347–48 (1969) (Kelly, J., concurring in part and dissenting in part)); *Mountain States,* 194 Colo. at 406, 572 P.2d at 835; *see also City of Sheridan v. City of Englewood,* 199 Colo. 348, 350–51, 609 P.2d 108, 109 (1980) ("A tax imposed under [section 31–15–501(1)(c)] must therefore be a tax on the privilege of doing business...."). With this precept in mind, the *Minturn* court read prior decisions of this court to limit an occupation tax to "a license fee, fixed at a flat rate," *Minturn,* 190 Colo. at 481, 548 P.2d at 1278, and expanded upon this interpretation through the non-fluctuation language quoted above.

■ *Minturn*'s approach fails to encompass fully the nature and purpose of the taxing power granted to municipalities by section 31–15–501(1)(c) as recognized by this court in other cases. In adopting a more expansive approach than *Minturn,* these cases have determined that an occupation tax need not be limited to persons or entities conducting their own businesses, but may apply to employees as well as employers. *See Duffy,* 168 Colo. at 100–02, 450 P.2d at 343–45. Similarly, an occupation tax is not necessarily a tax on a company's privilege to do business. *See Union Pac. R.R. Co. v. City & County of Denver,* 182 Colo. 136, 140, 511 P.2d 497, 499 (1973) (recognizing that Denver's occupation tax was not a tax on a company's privilege to do interstate business). Rather, an occupation tax also may serve to compensate a municipality for the use of its services and facilities. *See id.* (viewing Denver's occupation tax as "a tax on the privilege of using services and facilities provided by Denver"). An occupation tax is a means to require a business located within a municipality to pay its fair share of the expenses incurred by the municipality in providing those services and facilities. *See id.* The same logic allows an occupation tax to apply to employees who work in the munici-

pality so that the employees pay their fair shares of municipal costs. Viewed in this light, an occupation tax is more properly seen as a user's tax, appropriately assessed on the basis of the expenses incurred by the municipality. *See id.*

As we will discuss below, at least two reasons support following the more expansive approach of the *Duffy* majority and *Union Pacific,* rather than the restrictive approach of the *Duffy* dissent and *Minturn.*

### 1.

First, read in context, the language in *Minturn* does not provide a legitimate basis for limiting the scope of section 31–15–501(1)(c) to taxes that "do[] not fluctuate from month to month depending upon the financial success or sales of the enterprise." *Scheibe,* 983 P.2d at 134. *Minturn* turned on whether the tax at issue was an income tax in order to determine if the tax met the statutory standard of what is now section 31–15–501(1)(c) that the tax comply with the laws of this state. *See Minturn,* 190 Colo. at 480, 548 P.2d at 1277; *see also* discussion, *supra* Part II. This was reflected in the ultimate holding in *Minturn,* which refused to construe the ordinance at issue as an occupation tax because it was a municipally-imposed tax on income in violation of article X, section 17 of the Colorado Constitution. *See Minturn,* 190 Colo. at 482, 548 P.2d at 1278; *see also Mountain States,* 194 Colo. at 406, 572 P.2d at 835. We were not required to address the definitional scope of occupation taxes independent of determining whether such tax was in reality an income tax. However, this is the very basis upon which the Hotels and the court of appeals seek to use *Minturn.* They wrongly interpret *Minturn* as a decision that describes the definitional scope of "occupation tax" separate from whether the tax complies with the "law[s] of this state" in accordance with section 31–15–501(1)(c).

Further, *Minturn* and *Mountain States* addressed very different taxing schemes from the one at issue in this case. The amount of taxes paid in those cases was assessed against gross revenues and therefore bore a "direct relation" to the amount of

money received by the business. *See Minturn*, 190 Colo. at 482, 548 P.2d at 1278; *Mountain States*, 194 Colo. at 406, 572 P.2d at 835. *Minturn* and *Mountain States* held this "direct relation" created a tax on income, which is beyond the authority of municipalities. Here, the Eagle Tax bears no direct relation to the amount of money that the Hotels receive for the rooms rented. The tax rate remains constant at two dollars per rented room per month regardless of the rental price of each room.

Thus, *Minturn* addressed the scope of an income tax rather than the scope of an occupation tax and evaluated a very different taxing scheme from the one before us today. Because the non-fluctuation language was not necessary to the decisions in those cases it was dicta that does not control the case before us. *See, e.g., Main Elec., Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 526 n. 2 (Colo.1999) ("Dictum is not the law of the case and is not controlling precedent.").

### 2.

Second, the occupation tax statute itself and other cases decided by this court conflict with *Minturn*'s dictum, making it clear that an occupation tax is not limited by the non-fluctuation language of *Minturn*. The occupation tax statute itself does not support the restrictive reading adopted by the court of appeals. The legislative grant of authority in section 31–15–501(1)(c) provides little limitation on the scope of authority or how a municipality may exert that authority. Rather, it simply states that the tax must be levied against lawful occupations, it must not countermand state laws, and it must not include taxes on oil or gas wells. *See* § 31–15–501(1)(c). Such an unencumbered grant of authority is in marked contrast to that occasioned by the General Assembly in the sales tax act. *See* §§ 29–2–101 to –112, 9 C.R.S. (1999). In that act, the General Assembly precisely outlined the powers of the municipality to tax and the prohibitions on the exercise of that power. *See id.* Thus, the plain language of section 31–15–501(1)(c)

grants broad discretion to municipalities to determine against whom and in what manner a municipality will impose an occupation tax.

Decisions of this court have given effect to this broad, municipal authority in section 31–15–501(1)(c). Colorado, almost since statehood, has granted to cities the power to levy occupation taxes. *See* sec. 7(3), 1891 Colo. Sess. Laws 374, 378 (granting to first class cities the power "to license, regulate, and tax subject to any law of the state now in force, or hereafter to be enacted, any and all lawful occupation, business places, amusements, or places of amusements"). During this time, we have struck purported occupation taxes only for very circumscribed reasons flowing directly from the express language of the statute. *See Minturn*, 190 Colo. at 482, 548 P.2d at 1278 (striking a purported occupation tax that was, in reality, an income tax in violation of the laws of this state); *Mountain States*, 194 Colo. at 406, 572 P.2d at 835 (same); *Sheridan*, 199 Colo. at 350–51, 609 P.2d at 109 (striking an ordinance that imposed an admissions tax on all persons purchasing admission to a public event within the city); *see also Central City Opera House Ass'n v. City of Central City*, 650 P.2d 1349, 1349–50 (Colo.App.1982) (same).[3]

On the other hand, we have upheld a wide variety of occupation taxes against a host of different claims. Some of these cases upheld taxing schemes that imposed a flat fee on all businesses and occupations. *See Ping v. City of Cortez*, 139 Colo. 575, 342 P.2d 657 (1959) (upholding the imposition of a $25 flat fee on "every business" in the city); *Post v. City of Grand Junction*, 118 Colo. 434, 195 P.2d 958 (1948) (upholding an occupation tax on all liquor establishments). Others have upheld the validity of occupation taxes that impose different flat fees on different classes of businesses. *See Springston v. City of Fort Collins*, 184 Colo. 126, 518 P.2d 939 (1974) (upholding an occupation tax on liquor establishments that imposes flat fees that vary based upon the class of liquor license under which the establishment operates); *Tom's Tavern, Inc. v. City of Boulder*, 186 Colo.

---

**3.** We note that the municipalities in *Sheridan* and *Central City* were statutory rather than home rule cities, and therefore, they did not have constitu-

tional authority to levy an admissions tax. *See Sheridan*, 199 Colo. at 350, 609 P.2d at 109.

321, 526 P.2d 1328 (1974) (same). Still other cases have upheld occupation taxes that impose variable amounts of tax liability based upon the characteristics of the taxed entity. *See Colorado Auto Auction Servs. Corp. v. City of Commerce City,* 800 P.2d 998 (Colo. 1990) (upholding a tax of $10 on each motor vehicle transfer at auctions conducted within the city); *Duffy,* 168 Colo. at 99–102, 450 P.2d at 343–45 (upholding occupational "employer tax" of two dollars per month for each employee located in Denver earning more than $250 per month, and an occupational "employee" tax of two dollars per month on all employees earning more than $250 per month); *City of Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569 (1961) (upholding an occupation tax on lodging facilities of three or four dollars per rental unit per year); *Jackson v. City of Glenwood Springs,* 122 Colo. 323, 221 P.2d 1083 (1950) (upholding an occupation tax calculated based on the number of employees).

Specific decisions within this last category—upholding variable occupation taxes—illustrate the overly restrictive nature of the court of appeals' definition of an occupation tax as a taxing scheme that does not "fluctuate from month to month depending upon the financial success or sales of the enterprise." *Scheibe,* 983 P.2d at 134 (quoting *Minturn,* 190 Colo. at 482, 548 P.2d at 1278).

█ For example, in *Colorado Auto Auction,* we addressed the classification of a tax levied in the amount of ten dollars on each transfer of a motor vehicle at auctions conducted within the city of Commerce City. *See Colorado Auto Auction,* 800 P.2d at 999–1000. Rejecting the Auction's contention that the tax was invalid because it constituted a sales tax in violation of section 39–26–113(5)(a), 16B C.R.S. (1982) (exempting certain sales of automobiles from sales taxes), we implicitly addressed the scope of an occupation tax. We stated:

> Because the tax ordinance imposes a fixed amount upon the transfer of ownership of a motor vehicle at auction without regard

to the value of the vehicle sold, we conclude that the tax in question is an [occupation tax][4] imposed on the privilege of conducting a motor vehicle auction within the city.

*Id.* at 1003 (footnote added). Thus, under *Auto Auction,* we labeled as an occupation tax, a tax that fluctuated with the volume of sales transactions—the very practice now challenged by the Hotels with respect to the Eagle Tax.

Our cases addressing the Denver "head tax" also illustrate the flaws in the court of appeals' restrictive approach. *Cf. Duffy,* 168 Colo. at 91, 450 P.2d at 339; *Union Pac.,* 182 Colo. at 136, 511 P.2d at 497. The Denver head tax was a two-part tax imposed on both employers and employees. The ordinance imposed on an entity doing business in Denver a tax of two dollars per month for each employee located in Denver earning more than $250 per month. The ordinance also imposed on an employee working in Denver a tax of two dollars per month provided the employee earned more than $250 per month. *Duffy,* 168 Colo. at 99–101, 450 P.2d at 343–44. In *Duffy,* this court upheld the validity of the Denver head tax with respect to both employers and employees. *See id.* at 99–102, 450 P.2d at 343–45. Four years later, in *Union Pacific,* we upheld the validity of the tax as applied to employers engaged in interstate commerce. *See Union Pacific,* 182 Colo. at 139–43, 511 P.2d at 498–500.

The Eagle Tax now before us is comparable to the Denver head tax. In Denver's case, the rate charged to an employer was constant at two dollars per employee per month. The tax owed by the employer varied from month to month depending on the number of persons employed. In *Union Pacific,* we upheld this method of tax calculation against a claim that it was not a fair approximation of the use of the municipal services and facilities. We said:

> [W]e view the tax to be based on a fair approximation of use. The amount of the tax is determined generally by the number

4. An occupation tax is a subset of an excise tax. *See Auto Auction,* 800 P.2d at 1002–03; *Black's Law Dictionary* 585, 1471 (7th ed.1999). In *Auto Auction,* this court used the term "excise tax"

rather than the term "occupation tax"; however, an examination of the ordinance at issue and the text of the opinion indicate that we were referring to an occupation tax.

of employees of a business having some situs in Denver. We deem it not unreasonable to say that the number of employees indicates the size of a business, and the greater the size of a business, the greater will be the demands on municipal services. Although the number of employees of a business may present only a rough approximation of the business' use of municipal services and facilities, we do not view the taxing incident to be wholly unrelated to such use.

*Union Pac.,* 182 Colo. at 141, 511 P.2d at 499.

The same can be said for the Eagle Tax. Taxing the Hotels based on the number of rooms rented roughly approximates the amount of use that the Hotels, through their employees and customers, make of Eagle's services and facilities.

### C.

The effect of the court of appeals' reliance on the language in *Minturn* and *Mountain States* is to write into section 31–15–501(1)(c) the requirement that an occupation tax cannot "fluctuate from month to month depending upon the financial success or sales of the enterprise." *Minturn,* 190 Colo. at 482, 548 P.2d at 1278; *Scheibe,* 983 P.2d at 134. This approach is erroneous for several reasons. First, the non-fluctuation language in *Minturn* was dictum, which does not control this case. Second, the General Assembly, in enacting section 31–15–501(1)(c) did not expressly limit the definitional scope in this manner. *See* § 31–15–501(1)(c); *see also* §§ 29–2–101 to –112 (sales tax). Third, our decisions addressing occupation taxes, apart from the discussed language in *Minturn* and *Mountain States,* in no way support a non-fluctuation requirement; instead, they reflect a broad grant of municipal authority to tax in this area and they allow the taxed amount to vary based on an approximation of the degree of municipal services utilized. Finally, the court of appeals' decision leads to an absurd result. Under its reasoning, section 31–15–501(1)(c) precludes a tax imposed on the basis of the number of rented rooms, but allows a municipality to impose a tax on the

basis of the number of available rooms.[5] Thus, Eagle could impose a tax of two dollars per day for every available room but cannot impose a lesser tax of two dollars per day for every rented room. Such a result is contrary to our rules of statutory construction and cannot be consistent with legislative intent. *See AviComm, Inc. v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998).

Considering all of these factors, we do not read section 31–15–501(1)(c) to impose the non-fluctuation language held by the court of appeals to control this case. Because no other basis is alleged to render the Eagle Tax invalid, and because the Tax complies with the occupation tax statute and the cases construing it, we hold that the Eagle Tax is valid and enforceable under section 31–15–501(1)(c).

### IV.

For these reasons, we reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

---

**5.** The Hotels concede that *Minturn* does not preclude an occupation tax based on the number of rooms available for rental, rather than the number of rooms actually rented.