No. 22414.

Jesse J. McCray, Hugh McCammon, and James B. Fladung, individually and as representatives of a class similarly situated *v.* City of Boulder, Colorado, a municipal corporation, Francis J. Tedesco, as City Manager of the City of Boulder, and Fred J. Burmont, Jr., as Director of Finance and Record of the City of Boulder.
(439 P.2d 350)

Decided April 8, 1968.

384

JAMES H. SNYDER, WRIGHT J. MORGAN, JR., for plaintiffs in error.

PETER C. DIETZE, G. BRYAN MORGAN, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties appear here in the same order as they

appeared in the trial court, and we will refer to them as plaintiffs and defendants or by name.

Plaintiffs, residents and taxpaying landowners in the city of Boulder, brought a class action for themselves and as representatives of others similarly situated to have an ordinance and parking lot lease executed pursuant to the authority therein declared void. The ordinance in question authorized and directed the mayor and director of finance and record, on behalf of the city of Boulder, to enter into an agreement with Security Life and Accident Company, hereinafter referred to a Security Life or lessor, for the lease of specific property. A lease was subsequently executed by the parties which provided that rent was to be paid Security Life in monthly payments for a period of twenty years, the premises to be used for municipal off-street parking. The lease provided that at a future time it could be terminated by mutual consent of both parties if the public interest required a different use of the premises.

. Trial was to the court, and at the close of all the evidence, defendants' motion to dismiss was granted and judgment entered accordingly. We will discuss each argument advanced by plaintiffs in seeking reversal of the judgment.

I.

■ The ordinance was passed on the same date that it was introduced. This action by council can only be done under section 17 of the Boulder charter, which provides that no ordinance shall be enacted on the date it is introduced except in the case of an emergency, in which event the section further provides "The facts showing such urgency and need shall be specifically stated in the measure itself." It is argued on this point challenging the validity of the ordinance that no valid emergency existed and that none was specifically stated in the ordinance which could be the basis for its adoption as an emergency measure. The wording of section 3,

which the city contends does contain the necessary facts showing the emergency, is as follows:

"That in order that the construction of the municipal parking lot herein provided for may be started and completed as soon as possible so that the citizens of the City of Boulder may receive the benefit of the increased public health, safety and convenience produced by said improvements at the earliest reasonable time, in the opinion of the City Council an emergency exists and this ordinance is deemed necessary for the preservation of the public peace, health and property; therefore, it shall take effect immediately upon its introduction and passage as an emergency measure and be published in accordance with the provisions of the Charter of the City of Boulder, Colorado."

This identical question was before us previously in an action brought by one of the persons contesting the ordinance now under consideration. *Fladung v. City of Boulder*, 160 Colo. 271, 417 P.2d 787. In that case, in which the same counsel as appear here were involved, we stated that the ordinance then under consideration complied with section 17 of the Boulder charter "but just barely." We then went on to say "Better practice would dictate a more detailed statement concerning the specifics of the claimed urgency and thereby the problems complained of would be avoided."

The ordinance now under consideration, insofar as it attempts to comply with section 17 of the Boulder charter, is also in the "just barely" category. It certainly falls short of our admonition in *Fladung v. City of Boulder, supra.* In fact, if it were not for the imposition of judicial restraint which compels us to give validity to actions of the legislative branch of the Boulder city government, if we can possibly do so, we would be hard put to sanction such a feeble declaration as contained in this ordinance. It seems perfectly clear to us that the city could very well have stated, in plain language, the specifics from which it could be gleaned that a genuine

emergency exists rather than the watered down statement that the citizens should "receive the benefit of the increased public convenience produced by said improvement at the earliest possible time." We again warn the city of Boulder, and any other city, that they are skirting close to invalidating ordinances by the indiscriminate invocation of the emergency provision, without giving the specifics as required in various city charters.

II.

Plaintiffs next argue that the ordinance and lease executed pursuant thereto are void ad initio because there was no prior appropriation in the annual appropriation ordinance out of which the rental could be paid — all as required by section 103 of the Boulder charter.

 This argument has no merit. The requirements of section 103 were satisfied. The Boulder charter must be read as a whole. Sections thereof cannot be isolated as attempted herein. The city manager under section 93 of the charter is required to submit an annual budget for the ensuing fiscal year which must contain an itemized statement of the estimated and recommended appropriations for expenses and permanent improvements for each department. Copies of the budget are then printed and made available to the public, after submission to the city council, to allow for a public hearing before adoption.

██ Following adoption by the city council, section 95 of the charter provides that by ordinance the city council shall appropriate the sums required for the purposes set forth in the budget. This ordinance is known as the annual appropriation ordinance. It seems clear, then, that the annual appropriation ordinance and budget are closely integrated enactments. See Kingsley v. City and County of Denver, 126 Colo. 194, 247 P. 2d 805.

The annual appropriation ordinance for the fiscal year of 1965 appropriated the sum of $331,200 for the Public Improvement Fund "for the purpose of acquiring,

constructing, or improving public facilities within the City of Boulder." Item 15 of Activity No. 50 of the budget for that year contains the itemized expenditures proposed for public improvements. It clearly specifies the figure of $25,000 for the "Off Street Parking Fund" and states as follows:

"It is proposed that monies be used for the initial development of off street parking facilities in the downtown area."

Since the annual appropriation ordinance and the budget adopted by the city council upon which the ordinance is based must be read together, it is apparent that the city council did appropriate $25,000 for the development of off-street parking facilities from which the monthly rentals could be paid. For the city council to repeat every item specifically enumerated in the budget in the annual appropriation ordinance, as plaintiffs argue is required, would be redundant. We hold that there was sufficient compliance with section 103 of the Boulder charter.

### III.

Plaintiffs next contend that the city of Boulder pledged its credit to the private corporation (Security Life, the lessor) in violation of Article XI, section 1, of the Colorado constitution. They contend this is so because the lease was executed before title to the land in question was obtained by Security Life. Plaintiffs cite *Lord v. City and County of Denver*, 58 Colo. 1, 143 P. 284, as authority for their contention. The *Lord* case is not in point since the facts there point to a joint enterprise between the City and County of Denver and a private railroad company for the construction and use of the Moffat Tunnel.

In the case at bar we are not concerned with anything even similar to or even remotely approaching a joint enterprise. The obligation of the city of Boulder under the lease was limited to the payment of rent for the use of the premises, the rent to commence on the first

day of the month following the demolition of existing structures and resurfacing of the premises to make them ready for the installation of parking meters. The obligation of the city was a contingent one. If Security Life failed to secure the property or move the existing structures or resurface the premises, in that event the lease had no force or effect and the city was not bound to pay anything. The city of Boulder neither assumed, secured, guaranteed, underwrote or pledged its credit, directly or indirectly, for any indebtedness or obligation of Security Life.

## IV.

Plaintiffs attack the lease as being vague and indefinite as to the extent of the city's obligation because of the formula devised to arrive at the amount of the rent to be paid. The formula in the lease provided for the total amount of the rent to be computed at 120% of Security Life's cost of acquiring the property, razing the buildings thereon, and paving the area, to be paid in monthly installments over a period of twenty years. Plaintiffs advance the argument that the rental was at the sole discretion of Security Life and that the city failed in its duty to the taxpayers and acted arbitrarily and capriciously in binding the city to an unknown and undetermined amount predicated on costs, which, in turn, were undetermined.

Courts, as a general rule, are slow to interfere with the legislative actions of legally established municipal bodies unless fraud or abuse of discretion clearly appears. *Tamblyn v. City and County of Denver,* 118 Colo. 191, 194 P.2d 299. Plaintiffs do not dispute this proposition but contend that the facts here clearly show an abuse of discretion by the Boulder city council as a result of entering into such a lease.

We hold that the formula set forth in the lease is not vague and indefinite. Security Life did not have discretion, as plaintiffs contend, to determine the amount of the costs to be incurred. The lease required Security

Life to document in writing the costs incurred. The city of Boulder had the right to object to the costs and to set forth its grounds thereon. In the event of such an objection, Security Life and the city of Boulder were then required to arrive at a mutually acceptable figure. This procedure would clearly prevent an arbitrary figure from being used by Security Life as its costs. As the record shows, the estimates made by the city engineer in advance of making the lease proved to be extremely accurate as to the actual cost incurred by Security Life.

## V.

Plaintiffs next argue that under the terms of the lease "the city is bound for a period of twenty years to use the land only as designated by the lessor, regardless of change of conditions and the needs of the city for other and additional uses." Plaintiffs contend that this contractual limitation constitutes an attempted illegal delegation of power to a private concern by the city of Boulder.

The lease provides that the land in question shall be used exclusively by the city of Boulder for an automobile parking lot for the entire twenty year term of the lease, unless written consent is obtained from Security Life for another use. Such a provision requiring a lessee to obtain the consent of the lessor to use the leased premises for a different purpose than the one for which the lease provides is quite common. The city of Boulder as a municipality has no right as a matter of law to unilaterally shorten the term of a lease or change at will the use of a property leased to it. The lease does provide that where both parties consent, the lease can be terminated or modified if the public interest would benefit by a use other than a parking lot.

The Boulder city council exercised its legislative judgment and discretion in entering into the lease in question. Plaintiffs have not shown bad faith, fraud, or abuse of discretion on the part of the city of Boulder.

We find no basis to interfere with the discretion and judgment of the Boulder city council. *Tamblyn v. City and County of Denver, supra.*

## VI.

Plaintiffs contend that R.C.P. Colo. 52, requiring the trial court to enter findings of fact and conclusions of law was not complied with. There is no merit to this argument. It appears from the record that the trial court carefully set forth the allegations of plaintiffs' amended complaint, and then found that plaintiff failed to prove them. A finding of no evidence to support a specific allegation complied with Rule 52.

## VII.

Plaintiffs propounded 37 interrogatories to defendants, about half of which were objected to by defendants. Plaintiffs contend that the trial court erred in sustaining the objections and thereby denied plaintiffs' right of discovery. The denial of such a right, plaintiffs argue, requires reversal of the judgment and the granting of a new trial with directions for defendants to answer the interrogatories.

Although some of the objections to the interrogatories clearly should not have been sustained, many of the evidentiary matters sought were not of critical significance in the trial. All of the factual matters sought to be explored by the interrogatories were, in fact, explored at the trial. Plaintiffs have failed to show they were prejudiced in the trial of the case.

The judgment is affirmed.

Mr. Justice McWilliams not participating.