No. 25734

W. D. Enger, W. L. Beard, Clinton L. Kitson, John J. Arnhold, and Rose M. Beach, Individually and as Members and Representatives of the "Association of Voters of Colorado," and Unincorporated Association v. The Walker Field, Colorado Public Airport Authority, a Colorado Body Corporate and Politic; The City of Grand Junction, Colorado, A Municipal Corporation; and The Board of County Commissioners of Mesa County, Colorado

(508 P.2d 1245)

Decided April 16, 1973.

Sell & Colosky, James M. Colosky, for plaintiffs-appellants.

Gerald J. Ashby, for defendants-appellees.

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is a class action instituted pursuant to C.R.C.P. 23(a)(1) to challenge the validity of revenue bonds in the amount of one million dollars authorized by the Walker Field, Colorado Public Airport Authority (Airport Authority). Airport Authority was created by action of the combination of the County Commissioners of Mesa County and the City Council of Grand Junction, an Article XX home rule city, pursuant to the Public Airport Authority Act, 1965 Perm., C.R.S. 1963, 5-5-1, *et seq.*

The plaintiffs, W. D. Enger, W. L. Beard, Clinton L. Kitson, and John J. Arnhold are residents of the City of Grand Junction and Mesa County and tax-paying electors of both political subdivisions. The plaintiff Association of Voters of Colorado is an unincorporated, nonprofit association, of which the individual plaintiffs are members, organized for the purpose of obtaining fair and equitable taxation for the citizens of Mesa County.

The plaintiffs pled five separate claims. Several claims challenged the bond proceedings on more than one ground. However, the plaintiffs have not presented arguments on all issues raised by their complaint. Our discussion will be limited to four specific points argued in the brief. Another was dismissed without prejudice by stipulation of the parties. Defendants filed a motion to dismiss for failure to state a claim as to each of the claims. C.R.C.P. 12(b)(5). To their motions the defendants attached certified copies of the resolutions of the county and the city creating the Airport Authority referred to in plaintiffs' first claim, and the bond resolution adopted by the Board of Commissioners of the Authority on April 26, 1971, and certain "covenants and agreements" adopted by the City Council and the County Commissioners on April 7, 1971, the alleged invalidity of which forms the basis for one claim for relief in plaintiffs' complaint. We assume the trial court took these matters into consideration in sustaining the defendants' motions.

Under the foregoing circumstances the motion to dismiss for failure to state a claim upon which relief can be granted had to be treated by the trial court as a motion for summary

judgment and disposed of as provided in Rule 56. Rule 12(b).

It appears that, except for one issue which will be discussed later, there is no genuine issue as to any material fact and that the issues were properly resolved by the trial court as matters of law. Rule 56(c).

Each of the four points argued in the brief will be discussed separately.

## I.

The first claim challenged the validity of the emergency clause in the ordinance introduced and passed by the City Council on March 17, 1971, as its part of the joint action with Mesa County in creating the Walker Field, Colorado Public Airport Authority. The challenge involves the following provision of the Grand Junction City Charter: "No ordinance shall be passed finally on the date it is introduced, except in cases of emergency, for the preservation of the public peace, health or safety, and then only by the unanimous vote of all members of the Council."

The trial court, in ruling on the issues, noted that, "While it might be accurate to state that there was no 'real' emergency from the point of vantage adopted by the plaintiffs, a legislative determination that such an emergency exists and a recitation to the effect is conclusive. . . . see *Fladung v. Boulder,* 160 C. 271."

In *Fladung v. City of Boulder,* 160 Colo. 271, 417 P.2d 787, we held that, ". . . Whether the recital in a municipal ordinance that it is 'necessary for the immediate preservation of the public peace, health or safety is true or not, is a legislative, and not a judicial question.' *Shields, et al. v. City of Loveland,* et al., 74 Colo. 27, 218 Pac. 913."

The plaintiffs' response to the trial judge's holding appears in this quote from their brief: "The case of *McCray v. City of Boulder, Colorado,* 165 Colo. 383, 439 P.2d 350 (1968), seems to water down the district court's argument that legislative determination of an 'emergency' is 'conclusive.' "

In *Fladung* and *McCray* we were dealing with the Boulder

Charter, which provides that no ordinance shall be enacted on the date it is introduced except in the case of an emergency, and it further provides,

"The facts showing such urgency and need shall be specifically stated in the measure itself."

In *Fladung* and *McCray,* we refused to strike down the ordinances, holding that the ordinances "just barely" complied with the charter provision, refusing to intercede under the principle of judicial restraint, "which compels us to give validity to actions of the legislative branch of the Boulder City Government, if we can possibly do so, . . . ."

It is clear that the Grand Junction City Charter is less demanding than the Boulder Charter emergency provision relative to stating the facts showing the emergency. The only requirement in the Grand Junction Charter is that the emergency be "for the preservation of the public peace, health or safety." This legislative finding was made. However, the Grand Junction Charter requirement that the emergency clause be adopted "by the unanimous vote of all members of the Council" is much more demanding than the Boulder Charter, which only requires a vote of two-thirds of the council members present.

There was strict compliance by the Grand Junction Council with the terms of its charter. We find no error in the result reached by the trial court.

II.

■ Plaintiffs' second claim for relief attacks the constitutionality of 1969 Perm. Supp., C.R.S. 1963, 5-5-4(2), which provides:

"(2) Any combination creating an authority may be increased from time to time to include one or more additional counties or municipalities, if each additional municipality or county and the members then included in the authority and the board of commissioners of the authority, respectively, adopt a resolution consenting thereto. Upon the inclusion of any county or municipality in the authority so created, either initially or as an additional member later, all rights, contracts, obligations, and property, both real and

personal, of such municipality or county used for or in relation to transportation by air shall vest in the authority created pursuant to this section, unless otherwise specifically provided by the resolution including such municipality or county on the authority."

Plaintiffs argue that the provision for the vesting in the Airport Authority "all rights, contracts, obligations and property, both real and personal," belonging to the city and the county without the approval of the taxpaying electors in the respective political entities "constitutes the taking of property without due process of law," contrary to art. II, § 25, Constitution of Colorado. Plaintiffs also allege that the statute is vague, indefinite and uncertain in its terms, is not capable of reasonable interpretation, and attempts to grant special privileges in contravention of art. II, § 11, of the Constitution of Colorado.

The first argument was answered in *People v. Sours,* 31 Colo. 369, 74 P. 167 (1903), where similar contentions were answered in this fashion:

"Under the first objection it is said that some of the adjoining towns have by this amendment lost their public property — that, as the people of these towns had erected town buildings, these town buildings will be taken from them because the towns themselves are consolidated with Denver. That the people of other towns, excluded from the City and County of Denver, have contributed to the erection of public buildings in Arapahoe County, and that they will lose their share or interest in such public buildings and be required to contribute to the erection of public buildings in a new county. These are incidental and unavoidable conditions, which exist whenever the boundaries of counties are changed or municipalities are consolidated. These municipalities exist for the public convenience, their property is the property of the public, and is held, not as private property, but subject to the changing conditions and requirements of local government . . . ."

In *Board of County Commissioners of Jefferson County v. Denver,* 150 Colo. 198, 372 P.2d 152 (1962),

fundamental answers to the arguments appear in these excerpts, although "equal protection," rather than "due process" was the core of the issue there:

"Plaintiffs' argument disregards the fact that municipalities and counties exist for the convenient administration of government and are merely instruments of the state, created to carry out the will of the state. *E.g., Railroad Company v. County of Otoe,* 83 U.S. 667, 676 (1872); *Town of Mount Pleasant and Town of Caledonia v. Beckwith,* 100 U.S. 514 (1880); *The People, ex rel. Elder, as Treasurer of the City and County of Denver v. Sours,* 31 Colo. 369, 383-84-85-86-87, 74 Pac. 167 (1903) . . . ."

■ A municipal corporation, whether statutory or created under the constitution, has no privileges or immunities under the state constitution. *Board of County Commissioners of Jefferson County v. Denver, supra.* It follows that residents and taxpaying electors derive no such rights enforcible in behalf of the county and the city.

■ We find no merit to the mere assertion that the Public Airport Authority Act is vague, indefinite and uncertain. A legislative act will not be declared unconstitutional unless its invalidity is established beyond a reasonable doubt. *Morgan Co. Jr. College v. Jolly,* 168 Colo. 466, 452 P.2d 34 (1969).

### III.

■ Plaintiffs' third claim for relief challenges the constitutionality of 1969 Perm. Supp., C.R.S. 1963, 5-5-4(7) which provides:

"(7) Notwithstanding any other provision of this article to the contrary, the general assembly may, by law, authorize the governor, on behalf of the state, to join in the creation of any airport authority authorized by this article or to join any existing airport authority created pursuant to this article."

The attack on this provision is not well taken inasmuch as the resolutions creating the Airport Authority show that the general assembly did not, by law, authorize the governor to join, on behalf of the state, in the creation of the Airport Authority.

Likewise, the attack on 1969 Perm. Supp., C.R.S. 1963, 5-5-5(6), relating to the state's entitlement to representation on the Board of Commissioners is not relevant.

### IV.

■ The last challenge relates to companion resolutions adopted by the Board of County Commissioners and the City Council at the instigation of Boettcher and Company, the fiscal agent for the Airport Authority. The questioned commitment, also made by the City, reads:

"That the County of Mesa, State of Colorado, does hereby covenant and agree that it will, together with the City of Grand Junction, Colorado, contribute funds to the extent necessary for the efficient and economical operation of the airport facilities and related facilities."

The plaintiffs maintain that the companion resolutions created a debt contrary to art. XI of the state constitution.

The resolutions in question do not affect the validity of the bonds. Therefore, we do not reach the question of whether the companion resolutions create obligations which could be authorized only by a vote of the respective electorates.

Until the bondholders attempt to enforce the provisions of the resolutions for their own benefit, a decision as to this question is premature.

The judgment of the trial court is affirmed.

MR. JUSTICE ERICKSON concurs in result only.