COLORADO AUTO AUCTION SERVIC-
ES CORP., a Delaware corporation,
d/b/a Colorado Auto Auction, Inc.,
Plaintiff–Appellant/Cross–Appellee,

v.

The CITY OF COMMERCE CITY,
Defendant–Appellee/Cross–Appellant.

Nos. 89SA343, 89SA450.

Supreme Court of Colorado,
En Banc.

Oct. 29, 1990.

As Modified on Denial of Rehearing
Nov. 19, 1990.

Springer and Steinberg, P.C., Jeffrey A. Springer, Denver, for plaintiff-appellant/cross-appellee.

Gehler & Merrigan, Thomas E. Merrigan, Commerce City, Greengard Senter Goldfarb & Rice, Steven J. Dawes, Edward L. Serr, Denver, for defendant-appellee/cross-appellant.

Justice QUINN delivered the Opinion of the Court.

The issues in this appeal arise out of a judgment entered by the Adams County District Court in a declaratory and injunctive action filed by Colorado Auto Auction, Inc., a taxpayer, against the City of Commerce City. The district court upheld the validity of a Commerce City ordinance imposing a ten dollar tax on transfers of motor vehicles at auctions conducted within the city and invalidated the city council's declaration that the ordinance was an emergency measure.[1] We affirm that part of the judgment upholding the validity of the taxing ordinance and reverse that part of the judgment invalidating the declaration of emergency.

---

1. Because of Colorado Auto Auction's constitutional challenges to the tax ordinance, appellate jurisdiction over this appeal is in this court. § 13–4–102(1)(b) 6A C.R.S. (1987).

## I.

The City of Commerce City is a home rule municipality. On July 11, 1988, the City Council of Commerce City enacted Ordinance 846, entitled "Transfer Tax on Motor Vehicles Sold at Public Auction," with an effective date of August 15, 1988. The ordinance imposed a ten dollar tax on "each transfer of a motor vehicle sold at auction" in the city. Commerce City Ord. No. 846 § 20–214 (1988). Colorado Auto Auction, which was the only taxpayer affected by the ordinance, operates a weekly wholesale auction in Commerce City. The auctions are not public auctions and are open only to motor vehicle dealers. Approximately 450 to 550 dealers from twenty or more states and Mexico attend the auctions. Colorado Auto Auction generates revenue by charging each dealer in attendance a flat fee of $30 and the seller of each vehicle a graduated commission of $55 or more based upon the sale price of the vehicle. Approximately 600 vehicles are sold weekly at the auction, and of that number about 200 are sold to out-of-state dealers.

The auction is conducted by placing individual cars on the auction block. Once the bidding reaches a minimum level, the vehicle is then sold to the highest bidder. The actual transfer of possession occurs within ten days after the auction upon the seller's presentation of a clear title and the purchaser's payment of the bid price.

On September 7, 1988, Colorado Auto Auction filed a declaratory and injunctive action in the Adams County District Court, requesting that the court declare the ordinance invalid and to enjoin its enforcement on several grounds, including, as pertinent here: that the ordinance applies only to public auctions and hence is inapplicable to its private auctions; that the ordinance violates section 39–26–113(5)(a), 16B C.R.S. (1982), which exempts from all sales taxes "[t]he sale of a new or used automobile to a purchaser who is a nonresident of Colorado and who purchases such automobile for use outside this state"; and that the ordinance violates due process of law and equal protection of the laws under both the United States and Colorado Constitutions. U.S.

Const. amend. XIV; Colo.Const. art. II, § 25. Shortly after the enactment of Ordinance 846, Colorado Auto Auction, with the consent of Commerce City, began paying approximately $25,000 per month into a tax escrow account pending the final resolution of the validity of the ordinance.

After the complaint was filed, the City Council of Commerce City on November 7, 1988, enacted Ordinance 858 to amend Ordinance 846. Ordinance 858, which was enacted as an emergency measure, contained the following declaration of legislative intent:

> The City Council finds, determines and declares that after considering the businesses and occupations in the City and the relation of such businesses and occupations to the municipal welfare as well as the relation thereof to the expenditures required by the City, and proper, just and equitable distribution of the tax burden within the City in all matters proper to be considered in relation thereto, the excise tax imposed on the transfer of motor vehicles sold at auction in the City, with exemptions thereto, is reasonable, proper, uniform and nondiscriminatory and that any person, as herein defined, who engages in the conduct of an auction business in the City that involves the transfer of ownership of motor vehicles, or is authorized to conduct an auction business in the City which involves the transfer of ownership of motor vehicles, is the taxpayer liable for payment of such excise tax to the City in accord with the terms and provisions of this Article and further that, in the sole discretion of the taxpayer, the excise tax, or any portion thereof, imposed pursuant to this Article may be passed on to the transferee of any such motor vehicle transferred at auction of the taxpayer in the City and collected from the transferee by the taxpayer as reimbursement to the taxpayer.

Commerce City Ord. No. 858 § 20–211 (1988). The amending ordinance eliminated the word "public" from the title of the ordinance, described the tax imposed as an "excise" tax, and added the following defi-

nitions of the words "person" and "taxpayer" to § 20–213:

> (4) Person shall mean and include an individual, a business entity, firm, sole proprietorship, and corporation.
>
> (5) Taxpayer shall mean any person engaged in the conduct of an auction business in the City which involves the transfer of ownership of motor vehicles, or is authorized to conduct an auction business within the City which involves the transfer of ownership of motor vehicles.

In addition, Ordinance 858 changed the language in Ordinance 846 that imposed a "tax in the amount of $10.00 for each transfer of a motor vehicle sold at auction in the City" to the following: "an excise tax in the amount of $10.00 for each transfer of ownership of a motor vehicle at auction in the City." Commerce City Ord. No. 858 § 20–214 (1988).[2] The original version of Ordinance 846 exempted from the tax "[a]ny auction sale of a motor vehicle to a purchaser who is required under the laws of the State of Colorado to register such motor vehicle as a retail purchaser responsible for payment of a sales tax on such purchase." Commerce City Ord. No. 846 § 20–217(2) (1988). This provision was not amended and remained in full force and effect upon adoption of Ordinance 858.

Ordinance 858 contained an emergency clause which was enacted pursuant to the following provision of the Commerce City Charter:

> An ordinance which is declared therein to be an emergency ordinance and which is immediately necessary for the preservation of the public peace, health, safety or welfare may be enacted at the regular or special meeting at which it is introduced by seven (7) affirmative votes without any requirement of prior posting or publication and without any requirement of a second reading and passage. Such emergency ordinances, after passage, shall take effect immediately, but shall, for informational purposes, be posted and published as required in Section 5.6 for ordinances after final passage.

Commerce City Charter ch. V, § 5.4 (1970). The emergency measure in Ordinance 858 was approved by eight members of the city council and stated as follows:

> This City Council hereby finds and declares that an emergency exists and that passage of this Ordinance is immediately necessary in order to implement the amendments to said Ordinance No. 846 of the City of Commerce City as are set forth herein for the preservation of the public peace, health, safety and welfare.

Commerce City Ord. No. 858 § 3 (1988). After the adoption of Ordinance 858, Colorado Auto Auction amended its complaint to include the same claims it had directed against Ordinance 846 in its original complaint and added the additional claim that Ordinance 858 was not validly enacted as an emergency measure.[3] Commerce City, in its answer to the amended complaint, alleged that Ordinances 846 and 858 imposed an excise tax, not a sales tax, that the ordinances were enacted pursuant to applicable law, and that the ordinances conformed to constitutional requirements.

The case was tried to the court on April 28, 1989. At the conclusion of the evidence, the district court initially determined that the provisions of Ordinance 846 as originally enacted were vague and hence inapplicable to Colorado Auto Auction, but that Ordinance 846, as amended by Ordinance No. 858, did apply to Colorado Auto Auction, and then ruled as follows: that Ordinance 846 as amended by Ordinance 858 imposed an excise tax, rather than a sales tax, and that the enactment of the excise tax did not violate state statutory law; that the imposition of the tax on each

---

**2.** Ordinance 858 contains a penalty provision that imposes a fine of $300.00 or 90 days in jail, or both, for violating any section of the ordinance. Commerce City Ord. 858, § 20–237 (1988).

**3.** Colorado Auto Auction also claimed that Ordinances 846 and 858 impose an invalid *ad valorem* property tax upon personal property, that the ordinance violates the Commerce Clause of the United States Constitution, and that Ordinance 858 constitutes unconstitutional retrospective legislation. The district court rejected these claims, and they are not before us in this appeal.

"transfer of ownership of a motor vehicle at auction" was not unconstitutionally vague so as to violate due process of law; that Ordinance 846 as amended by Ordinance 858 did not violate equal protection of the laws; and, finally, that there was no evidence establishing an emergency and, consequently, the emergency clause of Ordinance 858 was an invalid exercise of the city's authority.

Colorado Auto Action appealed from that part of the judgment upholding the validity of the taxing ordinance, and Commerce City appealed from that part of the judgment invalidating the emergency clause.[4] Colorado Auto Auction claims that Ordinance 846 as amended by Ordinance 858 (hereinafter collectively referred to as the tax ordinance) is invalid for three reasons: (1) the tax ordinance was enacted in violation of section 39–26–113(5)(a), which exempts from all sales taxes any sale of a motor vehicle to a nonresident purchaser for use outside the state; (2) the tax ordinance is unconstitutionally vague because it fails to give fair notice of the taxable event that triggers the obligation to pay the tax and thus invites arbitrary and discriminatory application; and (3) the taxing ordinance violates equal protection of the laws because it lacks any rational basis for classifying Colorado Auto Auction as a "taxpayer" to the exclusion of all other persons or entities that sell at auction motor vehicles within the city. Commerce City, in turn, claims that the city council complied with the city charter in enacting the emergency provision of Ordinance 858 and that the city council's declaration of an emergency is not subject to judicial review in the absence of bad faith or fraud, neither of which is present here. We will consider these arguments in turn.

## II.

█ Colorado Auto Auction's initial claim is that the tax imposed by the ordinance is a sales tax and, as such, violates section 39–26–113(5)(a), which creates a

statutory exemption from sales taxes for nonresident purchasers of cars for use outside of the state. The district court, however, concluded that the tax created by the ordinance is an excise tax, rather than a sales tax, and thus does not violate Colorado statutory law. It is obvious that Colorado Auto Auction's argument retains viability only if the tax imposed by the city indeed was a sales tax. We must determine, therefore, the precise nature of the tax imposed by the city, because only if we conclude that the tax was a sales tax will it be necessary to determine whether the tax violates the statutory exemption for nonresident purchasers of automobiles for use outside of Colorado.

Commerce City is a home rule municipality and, pursuant to the Home Rule Amendment, Colo.Const. art. XX, § 6, is empowered to impose taxes for the purpose of providing revenues for the general expenses of government. The Commerce City Charter expressly authorizes the city council to levy and impose taxes for municipal purposes including, but not limited to, a sales tax, a use tax, and an occupation tax. Commerce City Charter ch. XIII, § 13.1 (1970). Although the district court categorized the tax in this case as an excise tax, such categorization does not settle the question whether the tax violates section 39–26–113(5)(a), since an excise tax is a generic term and may include several types of particular taxes. In *Cherry Hills Farms, Inc. v. City of Cherry Hills Village,* 670 P.2d 779, 782 (Colo.1983), for example, we distinguished an excise tax from a property tax and quoted with approval the following observations of the Kansas Supreme Court in *Callaway v. City of Overland Park,* 211 Kan. 646, 651, 508 P.2d 902, 907 (1973):

> The term "excise tax" has come to mean and include practically any tax which is not an *ad valorem* tax. An *ad valorem* tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on

**4.** Colorado Auto Auction filed its appeal in this court, and Commerce City filed its appeal in the court of appeals. We accepted jurisdiction over

Commerce City's appeal and consolidated it with Colorado Auto Auction's appeal.

the performance of an act, the engaging in an occupation or the enjoyment of a privilege.

*See also Black's Law Dictionary* 506 (5th ed. 1979) (excise tax is a tax "imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege"; it may include a tax "laid on manufacture, sale, or consumption of commodities or upon licenses to pursue certain occupations or upon corporate privileges.").

In determining whether a tax constitutes a sales tax, we look first to the meaning of the term "sale." A "sale" is commonly used to refer to a contract whereby the ownership of property is transferred from one person to another for a sum of money or other valuable consideration. *See* § 4–2–106(1), 2 C.R.S. (1973); *Black's Law Dictionary* 1200 (5th ed. 1979) ("sale" is contract between seller and buyer by which seller, in consideration of payment or promise of payment of certain price in money, transfers to buyer title and possession of property). In the context of taxation, the term "sale" has an expansive meaning and, unless specifically excluded by statute, includes "installment and credit sales and the exchange of property as well as the sale thereof for money" and "every such transaction, conditional or otherwise, for a consideration." § 39–26–102(10), 16B C.R.S. (1982). As the term implies, a "sales tax" is a tax on the sale of property with the amount of the tax based on a percentage of the purchase price paid or charged for the property exchanged in the sale. *See* § 39–26–106(1), 16B C.R.S. (1982) (sales tax imposed upon all sales of commodities and services at the rate of three percent of the amount of sale); *Black's Law Dictionary* 1308 (5th ed. 1979) (sales tax is tax levied on sale of goods based on their value).

The tax imposed by the ordinance in this case is not based on the price of the vehicle sold at the auction. Rather, the taxing ordinance imposes a uniform assessment of $10.00 "for each transfer of ownership of a motor vehicle at auction in the City unless otherwise exempted" by the ordinance. Commerce City Ord. No. 858 § 20–214 (1988). We acknowledge that the tax imposed by Commerce City will fluctuate with the number of motor vehicles transferred at auction. This fluctuation, however, does not render the tax a sales tax, since the amount of the tax is not based on the purchase price of the vehicle sold at auction. Rather, the amount of tax varies with the number of cars transferred and, to that extent, is directly related to the volume of business conducted at the auction. The tax, therefore, is clearly not a sales tax. Because the tax ordinance imposes a fixed amount upon the transfer of ownership of a motor vehicle at auction without regard to the value of the vehicle sold, we conclude that the tax in question is an excise tax imposed on the privilege of conducting a motor vehicle auction within the city. Such a tax is outside the scope of the sales tax exemption created by section 39–26–113(5)(a), 16B C.R.S. (1982).[5]

### III.

Colorado Auto Auction argues that even if the tax ordinance imposes an excise tax, the ordinance is unconstitutionally vague and violative of due process because it fails to define the term "transfer" and thus does not provide fair notice of the taxable event which triggers the tax liability. We are unpersuaded by this argument.

A tax ordinance enacted by a home rule municipality enjoys a presumption that the ordinance is within the constitutional authority of the municipality. *See Berman v. City and County of Denver,* 156 Colo. 538, 400 P.2d 434 (1965). Unless the ordinance adversely affects a fundamental constitutional right, the burden is upon the party challenging the ordinance to prove its unconstitutionality beyond a reasonable doubt. *E.g., People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 550 (Colo. 1982). The controlling standard in a void-for-vagueness challenge is whether the or-

---

**5.** Commerce City argues that section 39–26–113(5)(a) does not apply to home rule cities. We reject this argument. Section 39–26–113(5)(a) applies to sales taxes "the collection of which is provided for by this section," and the collection of sales taxes "imposed by ordinance of any home rule city" is expressly provided for in subsection (1) of section 39–26–113.

dinance either forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *Id.; see Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). In determining the meaning and scope of an arguably uncertain provision in an ordinance, a court properly may consider the statement of legislative purpose in the ordinance. *See Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 944 (Colo.1985).

■ In the instant case, the declaration of intent in Ordinance 858 leaves no doubt that the purpose of the ordinance is to impose the tax obligation upon any person who conducts an auction that results in the transfer of ownership of a motor vehicle. Commerce City Ord. No. 858 § 20–211 (1988). The term "taxpayer" is defined to comport with this legislative purpose, Commerce City Ord. No. 858 § 20–213(5) (1988), and the tax itself, which is the responsibility of the "taxpayer," is levied on each transfer of ownership of a motor vehicle at auction. Commerce City Ord. No. 858 § 20–214 (1988). These provisions, in our view, provide clear notice of the taxable event to which the ordinance applies.[6]

In urging a contrary conclusion, Colorado Auto Auction emphasizes that the transfer of ownership does not occur at the auction, but rather takes place subsequent to the auction when the purchaser pays for the vehicle and the seller produces a clear title to the vehicle. What this argument overlooks is that the tax, in keeping with the purpose of the ordinance, applies to the transfer of ownership of the vehicle from a seller to a purchaser as a result of the auction process. Thus, if a vehicle is auctioned and the purchaser fails to pay the price bid at the auction or the seller is unable to furnish clear title to the vehicle, the ownership would not be transferred as a result of the auction process. Under such circumstances the taxpayer would not be liable for the excise tax created by the tax ordinance. We thus conclude that the tax ordinance provides fair notice of the taxable event which triggers the tax liability and thus comports with due process of law under both the United States and Colorado Constitutions.

IV.

Colorado Auto Auction also claims that the tax ordinance violates equal protection of the laws under the United States and Colorado Constitutions because it applies only to Colorado Auto Auction and, hence, is discriminatory and unrelated to the stated purpose of equitably distributing the tax burden within the city. We again find Colorado Auto Auction's claim devoid of merit.

■ In the absence of a classification creating a suspect class or affecting a fundamental right, the controlling norm for evaluating an equal protection claim is the rational basis standard of review. This standard will be satisfied as long as the governmental classification is based on differences that are real and not illusory and is reasonably related to a legitimate governmental interest. *E.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Tassian v. People,* 731 P.2d 672 (Colo.1987); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo.1982). There is a presumption of constitutionality attaching to a classification analyzed under the rational basis standard, and the burden is on the challenging party to establish unconstitutionality beyond a reasonable doubt. *E.g., Tassian,* 731 P.2d at 675.

■ The tax ordinance under consideration creates a distinction for tax purposes between two categories of auctions. On the one hand, the ordinance imposes an excise tax on "each transfer of a motor vehicle sold at auction" and, on the other hand, it exempts auction sales of motor vehicles to purchasers who are required by Colorado law to "register such motor vehicle as a retail purchaser responsible for

---

**6.** During the trial the general manager of Colorado Auto Auction testified that he had no trouble understanding the manner in which the tax ordinance applied to its auction business and that he had no difficulty determining the number of vehicles transferred.

payment of a sales tax on such purchase." There are practical differences between these categories. The wholesale auctions conducted by Colorado Auto Auction, for example, are subject to the excise tax because they involve the transfer of motor vehicles "sold at auction" and the purchaser is not responsible for the payment of a sales tax on the purchase. The record shows that these auctions are conducted on a regular basis within the city, involve a large congregation of persons at the auction from both within and without the state, and require the transportation of hundreds of vehicles to the auction site. Colorado Auto Auction thus substantially benefits from police, fire, street maintenance, traffic control, and other municipal services in conducting its business, but, notwithstanding these municipal benefits, the sales of vehicles at auctions conducted by Colorado Auto Auction are not subject to a sales tax, since the purchases are for resale and not "at retail." *See* § 39–26–104(1)(a), 16B C.R.S. (1982) (sales tax levied upon "sales and purchases of tangible personal property at retail"). In contrast, the auction sales of motor vehicles to retail purchasers most likely will involve resident purchasers who will be required to register the vehicle in Colorado and thus be subject to a state sales tax and to any municipal sales tax that the city might choose to impose on the transaction in order to defray the cost of any municipal services that might be incidentally utilized in connection with any regularly conducted retail auction. While we acknowledge that a nonresident retail purchaser who buys at auction a motor vehicle for use outside the state would not be subject to any sales tax on the purchase, § 39–26–113(5)(a), 16B C.R.S. (1982), the record in this case does not give us any reason to believe that the retail auction sales in Commerce City result in such a high number of nontaxable sales as to deprive the distinction created by the ordinance of any reasonably objective content.

Furthermore, the fact that Colorado Auto Auction may be the only taxpayer presently subject to the tax ordinance is without constitutional significance. Rath-er, what is constitutionally significant for equal protection purposes is whether the tax ordinance reasonably distinguishes "between business or trades or between different methods of conducting the same general character of business or trade." *Tom's Tavern, Inc. v. City of Boulder,* 186 Colo. 321, 326, 526 P.2d 1328, 1330 (1974) (quoting 9 *McQuillin on Municipal Corporations* § 26.60 at 142 (3d Ed.Rev.)). The classification created by the tax ordinance, in our view, is based on a real, not arbitrary, distinction between auctions resulting in the transfer of motor vehicles which are "sold at auction" and for which the purchaser is not responsible for the payment of a sales tax and auction sales of motor vehicles to purchasers required by Colorado law to register the vehicle as a retail purchase for which the purchaser is responsible for the payment of a sales tax.

It cannot be disputed that a municipality has a legitimate objective in equitably distributing the burden of defraying governmental expenses among municipal taxpayers. The taxing ordinance furthers that objective by imposing a tax upon each transfer of ownership of a vehicle at auction within the city. The fact that the city might have chosen some other method of equitably distributing the tax burden "is not a sufficient reason to invalidate the particular method chosen." *Bloom v. City of Fort Collins,* 784 P.2d 304, 310 (Colo. 1989). We thus conclude that the tax ordinance does not violate equal protection of the laws.

## V.

We turn now to the issue of the emergency declaration. The district court ruled that Commerce City exceeded its authority in enacting Ordinance 858 because there was no evidence establishing the existence of an emergency. Commerce City argues that the enactment of the emergency measure in conformity with the provisions of the city charter is entitled to a presumption of validity and, in the absence of a showing by Colorado Auto Auction of fraud or bad faith on the part of the city council, the emergency measure should not be set aside

by a court. We agree with Commerce City's claim.

When a home rule city enacts emergency legislation in conformity with the provisions of its charter, the legislative declaration of purpose in enacting the emergency measure is presumed valid and will not be reviewed by the courts in the absence of a showing of fraud or bad faith. *See Slack v. City of Colorado Springs,* 655 P.2d 376, 379 (Colo.1982); *Board of County Commissioners v. City and County of Denver,* 193 Colo. 211, 216–17, 565 P.2d 212, 216 (1977); *Enger v. Walker Field,* 181 Colo. 253, 257–58, 508 P.2d 1245, 1247–48 (1973); *McCray v. City of Boulder,* 165 Colo. 383, 390, 439 P.2d 350, 354 (1968). If a city charter requires that there be a legislative recitation of the facts constituting the emergency, then such facts must be stated in the emergency measure. *See McCray,* 165 Colo. at 386–88, 439 P.2d at 352–53. Conversely, the factual basis for an emergency need not be stated when the charter is silent on the requirement of a factual recitation. *See Enger,* 181 Colo. at 258, 508 P.2d at 1247–48. When the factual recitation is not required and the emergency measure complies with the charter provisions, the presumption of validity duly attaches to the emergency measure and the party challenging the measure bears the burden of establishing fraud or bad faith on the part of the legislative body enacting the ordinance.

Section 5.4 of the Commerce City Charter states, in pertinent part, that an emergency ordinance "which is immediately necessary for the preservation of the public peace, health, safety or welfare may be enacted at the regular or special meeting at which it is introduced by seven (7) affirmative votes," and that such ordinance, after passage, "shall take effect immediately." Ordinance 858, which received the necessary votes required by the city charter for emergency legislation, contains a legislative declaration that an emergency exists and that the amendments to Ordinance 846 are necessary "for the preservation of the public peace, health, safety and welfare." This legislative declaration of emergency complies with the city charter and, in the absence of a showing of fraud or bad faith, must be presumed valid.

Colorado Auto Auction made no showing of fraud or bad faith in this case. The district court, therefore, should have presumed the emergency measure to be valid as of its effective date, November 7, 1988. Instead, the court invalidated the ordinance solely on the basis of Commerce City's failure to establish the factual basis of the emergency. In so ruling, the court erroneously imposed on the city a burden of proving a matter which the court should have legally presumed to have already existed.

We affirm that part of the judgment upholding the validity of the tax ordinance, and reverse that part of the judgment declaring the emergency measure invalid.

VOLLACK, J., does not participate.